**BLEECKER ASSOCIATES, Plaintiff,**

v.

**ASTORIA FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant,**

and

**400 East 9th Street Corp., Max Migdol, Stephen Santaromita, Irving Braver, Christine Bravman, the People of the State of New York, the City of New York, and John Doe 1–100, said names being fictitious, the true names being unknown to counterclaim plaintiff, the persons or entities intended being the tenants, subtenants and occupants of the mortgaged premises which are the subject of this action, Counterclaim Defendants.**

No. 81 Civ. 4618.

United States District Court, S. D. New York.

Aug. 11, 1982.

Stark, Elman, Amron & Haberman, New York City, for plaintiff; Leonard S. Elman, New York City, of counsel.

Cadwalader, Wickersham & Taft, New York City, for defendant; Grant B. Hering, Howard W. Burns, Jr., Kathy H. Chin, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, Bleecker Associates, commenced this action in New York State Supreme Court to enjoin defendant, Astoria Federal Savings and Loan Association ("Astoria Federal"), from instituting a mortgage foreclosure action and for a declaratory judgment that Astoria Federal had unreasonably withheld its consent to a transfer of title in certain premises in violation of a mortgage provision. Astoria Federal removed the action pursuant to 28 U.S.C., section 1441, upon allegations that this Court had original jurisdiction because the action was one "arising under" the laws of the United States.[1] The removal petition alleged that regulations promulgated by the Federal Home Loan Bank Board[2] preempted any state laws or regulations governing the lending practices of federally chartered savings and loan associations. Bleecker Associates now moves for an order pursuant to 28 U.S.C., section 1447(c), remanding the action to state court on the ground that it was improperly removed.

The underlying controversy centers about the interpretation of a "due-on-sale" clause contained in a mortgage which permits the lender to declare the entire balance of the loan immediately due and payable if property securing the loan is sold or otherwise transferred without the lender's consent. The mortgage here at issue was executed in December 1973 by the then owner of the premises in favor of Woodside Savings and Loan Association ("Woodside") to secure payment of a loan. Woodside was a New York state chartered mutual savings and loan association subject to the jurisdiction of the State Superintendent of Banks. Woodside changed its name to Citizens Savings and Loan Association ("Citizens") in 1974. On January 31, 1979 Citizens was possessed by the State Superintendent of Banks because it was deemed in unsafe and unsound condition.[3] On the same day, Citizens was acquired by Astoria Federal through a merger supervised by the Superintendent of Banks and the Federal Home Loan Bank Board. Pursuant to the plan of merger, Astoria Federal "succeed[ed] to all the property and mortgages and every other asset" of Citizens.[4] One of the mortgages that Astoria Federal acquired is the one here at issue that had been owned by Citizens since 1973. It contained the following due-on-sale provisions:

> 25. That the whole of said principal sum remaining unpaid shall become due and payable at the option of the Mortgagee immediately upon any voluntary or invol-

**1.** 28 U.S.C. § 1331 (1966 & Supp.1982) (federal question jurisdiction) or 28 U.S.C. § 1337 (1966 & Supp.1982) (cases arising under federal rules regulating commerce).

**2.** The Federal Home Loan Bank Board is an independent federal regulatory agency vested with plenary authority to administer the Home Owners' Loan Act of 1933, 12 U.S.C. § 1461 et seq. (1980 & Supp.1982), and is authorized to prescribe rules and regulations governing virtually every aspect of a federal savings and loan association "from its cradle to its corporate grave." *See Fidelity Federal Savings and Loan Association v. De La Cuesta*, —— U.S. ——, , 102 S.Ct. 3014, 3018, 73 L.Ed.2d 664 (1982) (*quoting People v. Coast Federal Savings and Loan Association*, 98 F.Supp. 311, 316 (S.D.Cal.1951).

**3.** *See* N.Y. Banking Law § 606 (McKinney 1971).

**4.** Plan and Agreement of Merger ¶ 1 (January 29, 1979).

untary sale, conveyance or transfer of the whole or of any part of the title to the premises described in said mortgage.... 26. The mortgagee shall not unreasonably withhold its consent to a sale, conveyance or transfer of the above mortgaged premises....

Up to the time of the merger and thereafter the then owner of the mortgaged premises had paid all installments as required under the terms of the mortgage. In November 1980, after the merger, the owner entered into an agreement to sell the property to Stephen Santaromita. Astoria Federal was advised of the contract of sale and supplied with information concerning the purchaser's finances, credit and character. On December 30, 1980, Astoria Federal informed Santaromita that it would approve his assumption of the mortgage conditioned, however, upon an increase in the annual interest rate from 9½% to 16%, an increase in the monthly amortization payments and payment of $4,485 for giving its consent. Santaromita contended that under New York law Astoria Federal could not vary the interest rate or receive any other additional sums as a condition for its consent.[5] On February 11, 1981 Santaromita assigned the contract of sale to the plaintiff herein, Bleecker Associates, a general partnership of which he is the managing partner, and title was conveyed to Bleecker Associates on that date.

Astoria Federal was advised that Bleecker Associates had become the owner of the property on February 18, 1981 and thereafter accepted Bleecker Associate's mortgage payments for March, April and May. On June 2, 1981 Astoria Federal notified Bleecker Associates that it had not consented to the transfer of the mortgaged premises and, pursuant to the due-on-sale clause, it elected to declare the entire unpaid indebtedness remaining on the mortgage due and payable immediately. Thereupon Bleecker commenced this action in state court alleging that Astoria Federal had unreasonably withheld its consent to the transfer by requiring modification in the mortgage terms.

The parties agree that the focus of the dispute is on the interpretation of the "due-on-sale" provision of the mortgage—more specifically, whether Astoria Federal may condition its consent upon a variation of the mortgage terms by increasing the interest rate and monthly installment payments and requiring a payment for its consent. Plaintiff contends that the intent of the parties with respect to clauses 25 and 26 quoted above is governed by New York state law and that while Astoria Federal may withhold consent, this is not without limitation. It acknowledges such consent may be withheld based upon the character or lack of financial responsibility of the proposed buyer but claims that consent may not be based upon a change in economic factors in the borrowing market.[6] Astoria Federal disputes such interpretation and claims that since it is a federally chartered association its lending practices, including the interpretation of these mortgage terms, is governed exclusively by federal law. It bases its federal preemption argument upon a regulation of the Federal Home Loan Bank Board, effective July 31, 1976, that expressly authorizes federal savings and loan associations to continue to include in their mortgage contracts due-on-sale clauses.[7]

The underlying public policy considerations which led to the adoption of the resolution on the due-on-sale clause generally were three-fold: (1) it permits lenders to evaluate the credit of each borrower; (2) it permits lenders to increase mortgage port-

---

**5.** *See Silver v. Rochester Savings Bank*, 73 A.D.2d 81, 424 N.Y.S.2d 945 (1980).

**6.** *See id.* at 86, 424 N.Y.S.2d at 948.

**7.** *See* 12 C.F.R. § 545.8–3(f)(1982) (as amended), which provides in part:
An association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instrument whereby the association may, at its option, declare immediately due and payable sums secured by the association's security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the associations's [sic] prior written consent.

folio yields during periods of rising rates and to decrease interest rates generally charged at those times for new mortgages; and (3) it facilitates the operation of the secondary mortgage market by shortening the average life of mortgages, thereby increasing the effective yields to secondary market investors and attracting funds to the residential mortgage market. The preamble to the resolution stated the Board's intent was that due-on-sale practices of federal savings and loan institutions be governed "exclusively by Federal law" and that "Federal associations shall not be bound by or subject to any conflicting State law which imposes different ... due-on-sale requirements." [8]

The basic issue here is whether the Federal Home Loan Bank Board, acting under its delegated authority by the Congress of the United States had the power, and if it did, intended, to preempt to the exclusion of state law the interpretation of the due-on-sale clause contained in the instant mortgage. Had the mortgage been issued by a federal savings and loan, under the recent ruling in *Fidelity Federal Savings & Loan Association v. De La Cuesta*,[9] there would be no doubt that this interpretation of the instant mortgage provisions would be determined as a matter of federal law. As phrased by the Supreme Court in *Fidelity Federal*, the issue of preemption rests upon whether the Federal Home Loan Bank Board meant to preempt state due-on-sale law.[10] The Court held that the Federal

Home Loan Bank Board's intent to preempt state law was "unambiguous" for it had unequivocally expressed its determination that due-on-sale practices of federal associations be governed exclusively by federal law[11] and the Court concluded that the regulation "was meant to pre-empt conflicting state limitations on the due-on-sale practices of federal savings and loans ...."[12]

However, unlike *Fidelity Federal*, the mortgage here was initially held by a New York state chartered institution which was the original lender of the funds. While at first glance it would appear that the public policy considerations which underlie the due-on-sale provision would apply equally to state and federal savings and loan institutions, other factors come into play as to the Federal Home Loan Bank Board's intent to preempt state law. First, there is the basic question whether the Federal Home Loan Bank Board has the authority to make its due-on-sale regulation, with its announced purpose to preempt state law, applicable in those instances where federal savings institutions acquire mortgages from state lending institutions that are not under its jurisdiction.[13] And even assuming such authority extends to state loan associations who are members of the Federal Home Loan Bank system[14] and whose deposits are insured by the Federal Savings and Loan Insurance Corporation,[15] the issue remains whether the Board intended that the regu-

---

**8.** Amendment Relating to Late Charges and Due-on-Sale Clauses, 41 Fed.Reg. 18266, 18267 (1976).

**9.** U.S. · , 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

**10.** *Id.* at ——, 102 S.Ct. at 3022.

**11.** *Id.* at 4919–20. *See* Amendments Relating to Late Charges and Due-on-Sale Clauses, 41 Fed.Reg. 18286, 18287 (1976); 12 C.F.R. 556.-9(f)(2) (1982) ("Paragraph (f) of § 545.8–3 confirms the continuing authority of Federal Associations to include due-on-sale clauses in their mortgage loan contracts .... Due-on-sale practices of Federal associations shall be governed exclusively by the Board's regulations in preemption of and without regard to any limitations imposed by state law ....").

**12.** At ——, 102 S.Ct. at 3025.

**13.** *See First Southern Federal Savings & Loan Association v. First Southern Savings and Loan Association*, 614 F.2d 71, 73 (5th Cir. 1980) ("The H.O.L.A. and regulations promulgated under it do not generally apply to state chartered associations ... even if they are insured by the Federal Savings and Loan Insurance Corp. or are regulated in other ways.").

**14.** Federal Home Loan Bank Act, 12 U.S.C. §§ 1421–1449 (1957 & Supp.1982).

**15.** Federal Savings and Loan Insurance Corporation Act, 12 U.S.C. § 1724–30(f) (1980).

lations apply in these circumstances. The exercise of such purported authority involves important policy considerations with respect to state agencies who have been vested by state legislatures with supervisory powers over state chartered lending institutions. Indeed, it was such regulatory power that was exercised in this instance by the State Superintendent of Banks and that led to the merger of Citizens with Astoria Federal and the transfer to it of the instant mortgage as an incident thereof.

There is no indication that the Federal Home Loan Bank Board intended to preempt state law in the case of a mortgage originated by a state chartered institution which subsequently was acquired by a federally chartered institution, rather than to leave this for determination by the state courts. In the absence of any clear indication of such intent, at the Court's suggestion the parties requested the Federal Home Loan Bank Board to submit its position on whether exercise of the due-on-sale provision contained in the mortgage at issue is governed by its regulations. The Board responded that it "has taken the position that federal law exclusively governs enforcement of due-on-sale clauses for loans originated by federal associations. However, the Board has never reached the question of, nor taken a formal position on, federal preemption in the specific factual situation before this Court . . . ."[16]

 In light of the Federal Home Loan Bank Board's statement that it has not yet decided whether its regulations govern mortgages originated by state chartered institutions, the Court does not find, assuming that the Board has the power of preemption with respect to state originated

loans, the unequivocal statement of intent needed to support defendant's claim of federal preemption. As held by the Court in *Ray v. Atlantic Richfield Co.*, a case involving whether the Secretary of Transportation had preempted state power to impose a tug-escort rule, where the agency itself has not yet decided whether it will preempt state law preemption will not be presumed.[17]

> The relevant inquiry . . . is whether the Secretary has either promulgated his own tug requirement for Puget Sound tanker navigation or has decided that no such requirement should be imposed at all. It does not appear to us that he has yet taken either course. . . . It may be that rules will be forthcoming that will preempt the State's present tug-escort rule, but until that occurs, the State's requirement need not give way under the Supremacy Clause.[18]

Any decision whether federal law should apply to mortgages originated by a state institution and subsequently acquired by a federal association rests with the Federal Home Loan Bank Board as it involves important policy considerations.[19] The responsibility is that of the Board. For the Court upon the instant record to determine that the Board intended such preemption would involve a legislative and not a judicial function. A federal court should exercise extreme caution before finding preemption based upon federal agency action even assuming the agency has the delegated power to take such action.[20] Moreover, caution further counsels against jurisdiction based on the preemption regulation for there lurks in this case substantial constitutional issues of the impairment of property

---

**16.** Letter from John E. Gunther, Deputy Director, Litigation Division (March 12, 1982).

**17.** 435 U.S. 151, 171–72, 98 S.Ct. 988, 1001, 55 L.Ed.2d 179 (1978).

**18.** *Id.* at 172, 98 S.Ct. at 1001.

**19.** *Cf. Williams v. First Federal Savings and Loan Association*, 651 F.2d 910, 922 (4th Cir. 1981).

**20.** *See Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union,* ── U.S. ──, ──, 102 S.Ct. 2202, 2211, 72 L.Ed.2d 639 (U.S.1982) (Powell, J., concurring) ("Because a federal court should exercise extreme caution before assuming jurisdiction not clearly conferred by Congress, we should not condone the implication of federal jurisdiction over contract claims in the absence of an unambiguous expression of congressional intent.")

rights acquired under state law.[21] As already noted, the mortgage to secure the original loan was executed in 1973 to Citizens, a New York lending institution. There can be no doubt that up to the acquisition of the mortgage by Astoria Federal, New York law governed the interpretation of the terms of the mortgage. The claim that its acquisition six years later effected a change in the rights of the mortgagor as to the applicable law clearly raises constitutional issues.

Under the facts here presented, the interpretation of the mortgage is a matter of state law and consequently the Court does not have jurisdiction over the action. Accordingly, the motion to remand the action to the state court is granted.

So ordered.

---

21. *Cf. Fidelity Federal Savings & Loan Association v. De La Cuesta*, —— U.S. ——, —— n.24, 102 S.Ct. 3014, 3031 n.24, 73 L.Ed.2d 664 (1982); *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964); *W.B. Worthen Co. v. Kavanaugh*, 295 U.S. 56, 60, 55 S.Ct. 555, 556, 79 L.Ed. 1298 (1935); *Home Building and Loan Association v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934); *Block v. Hirsh*, 256 U.S. 135, 156, 41 S.Ct. 458, 459, 65 L.Ed. 865 (1921).