Paul J. VIERECK and Donna M. Viereck, (C1–82–870) **Respondents,**

v.

**PEOPLES SAVINGS AND LOAN ASSOCIATION,** (C1–82–870) **Appellant,**

and

David W. HUEY and Marcia K. Huey, (CX–82–1600) **Respondents,**

v.

**FIRST STATE FEDERAL SAVINGS AND LOAN ASSOCIATION,** (CX–82–1600) **Appellant.**

Nos. C1–82–870, CX–82–1600.

Supreme Court of Minnesota.

Jan. 20, 1984.

TILA allowed only one recovery per transaction irrespective of the number of TILA violations in that transaction.

Christian, Slen, Savelkoul, Johnson, Broberg & Kohl, Henry J. Savelkoul, Phillip A. Kohl, Albert Lea, for Peoples Savings and Loan Ass'n.

Hessian, McKasy & Soderberg, William J. Utermohlen, Minneapolis, for First State Federal Sav. and Loan.

O'Neill Goggins, Traxler & Zard, Norbert B. Traxler, New Prague, for Paul and Donna Viereck.

Muir, Meyer, Storey, Simons & Costello by Wm. P. Simons and David W. Huey, Jackson, for Hueys.

Moss, Flaherty, Clarkson & Fletcher by Maher J. Weinstein, Minneapolis, amicus curiae, for the Savings League of Minnesota.

KELLEY, Justice.

In each of these cases separate trial judges held due-on-sale clauses in conventional mortgages on borrower-occupied residential property executed prior to June 1, 1979, were unenforceable by mortgagees who, although state chartered at the time of the execution of each mortgage, were federally chartered at the time of the attempted accelerations of payment upon transfer of the mortgage property by the mortgagors. We affirm.

The Vierecks executed a uniform FNMA/FHLMC mortgage [1] on residential property owned and occupied by them to Peoples Savings and Loan Association (Peoples) on July 12, 1978. This mortgage contained a due-on-sale clause. The Vierecks in 1980 bought a new home and hoped to sell their old home. When they attempted to sell the mortgaged home on a contract for deed, Peoples informed them that it would accelerate the payment of the unpaid balance of the mortgage. Because the sale of the mortgaged property could not be consummated without a loan assumption, the Vierecks rented the property and commenced a declaratory judgment action to determine the enforceability of the due-on-sale clause. The trial court held the clause unenforceable absent an increase in credit risk or risk to the mortgagee's security interest.

In September 1976, the Hueys mortgaged their Minneapolis home to Knutson Mortgage and Financial Corporation (Knutson). That mortgage likewise was on the

---

**1.** This is the uniform mortgage instrument developed by the Federal National Mortgage Association (FNMA) and the Federal Home Loan Mortgage Corporation (FHLMC).

uniform FNMA/FHLMC form and contained a due-on-sale clause. In December 1979, the Hueys requested the assignee of the mortgage, First State Federal Savings and Loan Association (First State), to consent to the sale of the property on a contract for deed without acceleration of the unpaid balance of the mortgage. First State refused to consent. Hueys then commenced a declaratory judgment action to challenge the validity of the due-on-sale clause.[2] Both First State and the Hueys moved for summary judgment. The trial judge granted summary judgment in favor of the Hueys. In doing so he held that federal law, generally validating due-on-sale clauses, did not preempt state law. He concluded that Minnesota common law governs mortgages executed prior to June 1, 1979, and that Minnesota law considered due-on-sale clauses in mortgages on borrower-occupied residences an unreasonable restraint on alienation.

At the time of the execution of the Viereck mortgage, Peoples was a state-chartered savings and loan association. It became federally chartered effective May 3, 1982. A few weeks after the execution of the Huey mortgage, Knutson, a state-chartered institution, assigned the Huey mortgage to First State, a federally-chartered savings and loan association. Each lending institution appeals the determination of the trial court below that the due-on-sale clause was unenforceable. Because the issues on appeal in each case are identical, we consolidated the cases for our consideration.

1. Appellants argue that Minnesota law governing the exercise of mortgage due-on-sale clauses executed prior to June 1, 1979 is preempted by the Garn-St. Germain Depository Institutions Act of 1982 (Garn Act), Pub.L. No. 97–320, 96 Stat. 1469 (1982), and federal regulation. They contend that federal law governs the acceleration of payment of these mortgages because, despite the origination by state-chartered institutions, they are now held by federally-chartered lending associations. They rely on *Fidelity Federal Savings and Loan Association v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), which held that federal savings and loan institutions could exercise due-on-sale clauses pursuant to federal regulation, state law to the contrary notwithstanding. We conclude that reliance is misplaced. Two of the security instruments in *de la Cuesta* were originated prior to the effective date of the preempting federal regulation. Under California law as it existed when the loans were executed, acceleration was permitted. Between the date of execution and the date the federally-chartered institution sought to accelerate on transfer of the mortgaged property, California law was changed so as to bar or restrict acceleration. *See Wellenkamp v. Bank of America*, 21 Cal.3d 943, 148 Cal.Rptr. 379, 582 P.2d 970 (1978). This change in the California law was not applicable, however, to federally-chartered savings and loan institutions since the federal regulation adopted in 1976 was preemptive.[3] Thus, the Court never addressed the issue whether the federal regulation could apply to impair contractual rights acquired under state law. *de la Cuesta*, 458 U.S. at 170–71, n. 24, 102 S.Ct. at 3031. Other federal courts have questioned the application of this federal regulation to mortgages originated by state-chartered institutions and later held by federally-chartered lending institutions. *See Williams v. First Federal Savings and Loan Association of Arlington*, 651 F.2d 910, 922–23 (4th Cir. 1981); *Bleecker Associates v. Astoria Federal Savings and Loan Association*, 544 F.Supp. 794, 797–99 (S.D.N.Y.1982). Moreover, the assignment of mortgages to the Federal Home Loan Mortgage Corporation (FHLMC), a federal instrumentality, has been held not to alter the application of state law requiring payment of interest on

**2.** First State had threatened foreclosure of the mortgage because the Hueys did sell the mortgaged property on a contract for deed. The Hueys obtained a temporary injunction restraining the threatened foreclosure.

**3.** *See* 12 C.F.R. § 545.8–3(f) (1982).

escrowed tax and insurance funds. *See, e.g., Federal National Mortgage Association v. Lefkowitz,* 390 F.Supp. 1364, 1370 (S.D.N.Y.1975); *cf. Derenco, Inc. v. Benjamin Franklin Federal Savings and Loan Association,* 281 Or. 533, 537–49, 577 P.2d 477, 482–87 (1978), *cert. denied,* 439 U.S. 1051, 99 S.Ct. 733, 58 L.Ed.2d 712 (1978) (federal regulation governing interest paid on escrowed tax and insurance funds not retroactive). We see no reason to treat an assignment to a federally-chartered savings and loan association any differently from an assignment to the FHLMC.

Finally, we note that Congress in enacting the Garn Act included a "window period." Garn Act, Pub.L. No. 97–320, § 341(c)(1), 96 Stat. 1469, 1505–07 (1982) (codified at 12 U.S.C.A. § 1701j–3(c)(1) (West Supp.1983)). The policy evinced by the inclusion of the "window period" is to insure that mortgagors who relied upon state law prohibiting or limiting loan acceleration prior to enactment of the Garn Act are protected by state law during the transition period between October 15, 1982 and October 15, 1985. *See, e.g.,* S.Rep. No. 536, 97th Cong., 2d Sess. 22 (1982), *reprinted in* 1982 U.S.Code Cong. & Ad.News 3054, 3076. Accordingly, if state-chartered institutions may circumvent state law restrictions on due-on-sale clauses by selling old mortgages to federal savings and loans or by acquiring a federal charter, this policy is thwarted.

Therefore, because neither the federal regulation (12 C.F.R. § 545.8–3(f) (1982)) nor the Garn Act are to be applied retroactively, and since Congress has recognized the policy that state law at the time of assumption or execution of the mortgage would apply in some cases by inclusion of the "window period" in the Garn Act, we hold there is no federal preemption which would permit these appel-

lants to accelerate the payment of mortgage balances on the occasion of the mortgagor seeking to transfer the mortgage on borrower-occupied residential property.

2. That conclusion, however, does not end our inquiry. If, under Minnesota law at the time of the original execution of these two mortgages, due-on-sale clauses in mortgages could be exercised by lenders upon resale of the mortgaged property by buyers, appellants would prevail. Appellants contend that Minnesota law was silent on the enforcement of due-on-sale clauses prior to the enactment of Minn. Stat. § 47.20, subd. 6 (1982).[4] Therefore, they contend, since Minnesota's "window period" only applied to loans originating on or after June 1, 1979 and before May 9, 1981, the preemption rule of the Garn Act applies to these loans. 12 U.S.C.A. § 1701j–3(b)(1) (West Supp.1983). Respondents argue that section 47.20, subd. 6, as originally enacted in 1976, is a restriction on the validity of "due-on-sale" clauses that began the "window period" in Minnesota.

A statute is deemed to operate retroactively only if the legislative body enacting it evidences a clear expression to do so. *United States v. Security Industrial Bank,* — U.S. —, —, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982); 2 Sands, Sutherland Statutory Construction § 41.04, at 252 (4th ed. 1973). Our examination of the Garn Act reveals no provision providing for retroactive application of the preemption provision. Absent such expression, the preemption provisions of the Garn Act apply to loans originated or transferred after October 15, 1982, the effective date of the act. *See Home Savings Bank of Upstate New York v. Baer Properties, Ltd.,* 92 A.D.2d 98, 460 N.Y.S.2d 833 (N.Y.App.Div. 1983). Consequently, since respondents originally executed these two mortgages

---

**4.** This section was originally enacted by Act of Apr. 13, 1976, ch. 300, sec. 2, 1976 Minn.Laws 1118. It was subsequently amended in 1979 by Act of Apr. 30, 1979, ch. 48, sec. 2, 1979 Minn. Laws 63, and in 1981 by Act of May 8, 1981, ch. 137, sec. 5, 1981 Minn.Laws 428. The statute severely limited the right of mortgagees to accel-

erate payment of loan balances on resale of property subject to conventional mortgages made on or after June 1, 1979, and before May 9, 1981. Those conventional loans made after May 8, 1981 are governed by Minn.Stat. § 47.20, subd. 6a (1982) as amended by Act of June 7, 1983, ch. 288, sec. 3, 1983 Minn.Laws 1246.

and then sought to transfer the mortgages to prospective buyers before the effective date of the Garn Act, which does not provide for retroactive preemption of state due-on-sale restrictions, we hold that federal law does not preempt Minnesota law in determining whether these mortgage balances may be accelerated upon resale of the mortgage properties.[5]

3. Having concluded that there is no federal preemption, we must next consider whether due-on-sale clauses in mortgages originated or transferred prior to June 1, 1979 on borrower-occupied residences are enforceable in Minnesota. This court has not directly addressed the issue.[6] We have held that due-on-sale clauses in mortgages on investment residential property were not per se unreasonable and, if reasonable, were enforceable. *Holiday Acres No. 3 v. Midwest Federal Savings and Loan Association*, 308 N.W.2d 471 (Minn.1981); *Torgerson-Forstrom H.I. of Willmar, Inc. v. Olmsted Federal Savings and Loan Association*, 339 N.W.2d 901 (Minn.1983). Before so holding in *Holiday Acres*, in dicta, we extensively reviewed the law as well as the policy reasons considered by the courts in determining whether due-on-sale clauses in mortgages were enforceable. We noted that where, as here, the mortgage was on a borrower-occupied residential property, the homeowner and the lender were not on equal footing at the time of loan origination. *Holiday Acres*, 308 N.W.2d at 482. We noted that to permit the mortgagee to accelerate the loan balance, or to agree to an assumption only on condition of payment of a substantially higher interest rate, imposes a penalty upon the mortgagor who will inevitably receive less for the property as a result. Moreover, we observed such an acceleration right would result in restriction of the sale of the property because the new buyer either has to pay more in interest on the loan or cannot consummate the transaction because of the higher payments. *Id.* at 481. Indeed, that was the situation in at least one of the mortgages here under consideration. We there recognized that frequently borrower-occupiers have most of their total assets tied up in their residence. In this mobile society, often they must sell because of new employment or transfer of employment. *Id.* at 482.

We further noted that if enforcement of due-on-sale clauses in mortgages on borrower-occupied residential property is permitted, it is very much akin to a promissory restraint on alienation. *Id.* at 482–84. As we there observed, some courts have so held. *See, e.g., Nichols v. Ann Arbor Federal Savings & Loan Association*, 73 Mich.App. 163, 250 N.W.2d 804 (1977); *see also* Volkmer, *The Application of the Restraints on Alienation Doctrine to Real Property Security Interests*, 58 Iowa L.Rev. 747, 773 and 774 n. 114 (1973). In *Holiday Acres* while acknowledging that some of the same compelling reasons prohibiting the exercise of the right of acceleration exist in a situation where the loan is used to finance investment residential property as well as in the case of borrower-occupied residential property, we also acknowledged that the need of the borrower-occupier for quick and easy transfer of a personal residence is usually greater than that of the investment borrower. We concluded by saying:

> The tension between restraint on alienation principles and the freedom to con-

5. Although both appellants and respondents argue extensively in their briefs about when the "window period" of the Garn Act begins and ends in Minnesota, we do not here reach that issue since the Garn Act preemption provision is held not applicable retroactively to conventional loans originated or transferred prior to the effective date of the act.

6. Amicus curiae, The Savings League of Minnesota, relies on *Larson v. Johnson*, 175 Minn. 502, 221 N.W. 871 (1928). That case considered the validity of a restriction against assignment of the vendee's interest in a contract for deed. In holding the restriction valid, the court analogized the situation to that of a lessee in possession and concluded the vendor's interest in the condition and use of the property was similar to that of a lessor. While this case may support acceleration of a mortgage to protect the lender's security interest, it does not support appellants' argument for acceleration of the instant mortgages because of interest rate fluctuations.

tract strikes a different balance when the validity of the use of a due-on-sale clause to increase interest rates is questioned in a commercial setting, where economic considerations outweigh all others. This court views the transaction in an investment setting as one presumably less subject to over-reaching, not because the borrower will in all cases be more sophisticated but because of the forces compelling the transaction.

*Holiday Acres*, 308 N.W.2d at 484.

 Thus, we clearly drew a distinction between a borrower-occupier and a borrower-investor. Relying on the policy reasons there reviewed as well as Minn. Stat. § 47.20, subd. 6 (1982), we indicated that enforcement of due-on-sale clauses in borrower-occupied conventional residential mortgages is per se unreasonable except to protect against impairment of the lender's security interest.[7] If the precise issue we have here before us had been presented prior to June 1, 1979, we conclude this court would have held that an acceleration of the balance due on a conventional mortgage on borrower-occupied residential property was per se unreasonable absent a valid credit or security interest risk. Since neither regulation 12 C.F.R. § 545.8–3(f) (1982) nor the Garn Act is retroactive in application so as to provide for federal preemption[8] over the Minnesota law then existing, we affirm both cases.

Affirmed.

---

7. In neither of these cases is it contended that the proposed transfers impaired either of the lenders' security interest.

8. We did not consider the retroactive impact of the Garn Act in deciding the validity of a due-on-sale clause in *Karim v. Werner,* 333 N.W.2d 877 (Minn.1983). All we meant in *Karim* at footnote 1, page 878, was that mortgages transferred on or after the effective date of the Garn Act (October 15, 1982) would thereafter be subject to federal preemption if not within the window provisions of the act. In the instant case, neither mortgage was transferred after October 15, 1982.