GERALD L. BOYES AND PATRICIA A. BOYES, HUSBAND AND WIFE; AND PHYLLIS BLAKE, APPELLANTS, v. VALLEY BANK OF NEVADA, A NEVADA CORPORATION; AND FIRST COMMERCIAL TITLE, INC., A NEVADA CORPORATION, RESPONDENTS.

No. 14076

June 21, 1985

701 P.2d 1008

*Cal Hoover,* Reno, for Appellants.

*Beasley & Holden,* Reno, for Respondents.

## OPINION

*Per Curiam:*

This is an appeal from an order of the district court denying appellants' request for a temporary restraining order and a preliminary injunction. The facts are not in dispute.

In July of 1978, appellants Gerald and Patricia Boyes purchased certain real property. To facilitate the purchase, the Boyeses executed a promissory note payable to Valley Bank in the sum of $43,500 at an interest rate of 9.25% per annum. The note was secured by a deed of trust, which designated First Commercial Title as the trustee and Valley Bank as the beneficiary.

On August 20, 1981, the Boyeses executed a contract of sale in which they agreed to sell the real property to appellant Phyllis Blake for the sum of $60,000 payable in installments at the rate of 9.25% interest. Under the terms of this contract, Blake agreed to make all payments through a collection escrow account at Washoe Title Guaranty Company. Washoe Title, in turn, was to pay Valley Bank the monthly installments due under the Boyeses' note and then pay the balance of the proceeds to the Boyeses. The Boyeses retained legal title to the real property to secure Blake's

contractual obligation; Blake received contractual rights, including the right to use and possess the property so long as payments were kept current and other conditions were met. Neither the Boyeses nor Blake obtained written consent from Valley Bank to proceed with the sale.

Valley Bank, however, became aware of the contract of sale between the Boyeses and Blake on October 5, 1981, by virtue of an insurance binder issued by State Farm Fire and Casualty Company which covered the real property. Consequently, on October 21, 1981, Valley Bank corresponded with the Boyeses and demanded that they pay in full their promissory note in accordance with the "due-on-sale" clause contained in paragraph 17 of the deed of trust.[1] Valley Bank accepted payments for the months of August through December, 1981, but refused further payments beginning January, 1982. On January 8, 1982, at the direction of Valley Bank, First Commercial Title recorded a notice of default and election to sell under the deed of trust.

Thereafter, on April 26, 1982, appellants filed a complaint seeking a declaration that Valley Bank's exercise of the due-on-sale clause constituted an unreasonable restraint upon their right to alienate the property. The complaint also requested that the district court issue a temporary restraining order and a preliminary injunction restraining Valley Bank and First Commercial Title from exercising the power of sale contained in the deed of trust.

The district court subsequently denied appellants' request for injunctive relief. The lower court found that the due-on-sale clause did not constitute an unreasonable restraint on alienation and was not per se inequitable or violative of public policy. Accordingly, the district court refused to enjoin the foreclosure proceedings, and this appeal followed.[2] We reverse.

Generally, the grant or denial of a preliminary injunction is a question addressed to the discretion of the district court. Number One Rent-A-Car v. Ramada Inns, 94 Nev. 779, 587 P.2d 1329 (1978). We are, therefore, usually reluctant to overturn the determination of the trial court in a preliminary injunction matter. *See* Nevada Escrow Service, Inc. v. Crockett, 91 Nev. 201, 533 P.2d

---

[1]Paragraph 17 provides in pertinent part:

> If all or any part of the property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust . . . Lender may, at Lender's option, declare all the sums secured by this Deed of Trust to be immediately due and payable.
> . . .

[2]On October 12, 1982, this court issued a stay of the foreclosure proceedings pending this appeal.

471 (1975). The present case, however, is before us on the basis of stipulated facts, with purely legal issues presented. Because we have resolved the legal issues in appellants' favor, we have concluded that the preliminary injunction should issue.

A primary question presented in this appeal is whether, absent any showing of an impairment of the lender's security interest, the enforcement of a due-on-sale clause constitutes an unreasonable restraint on alienation where the trustor-vendor has executed an installment land contract. In First Commercial Title v. Holmes, 92 Nev. 363, 550 P.2d 1271 (1976), this court upheld the enforcement of a due-on-sale clause where an outright sale occurred by the trustor-vendor. There, however, we specifically reserved expressing an opinon regarding the enforceability of such a clause "where the trustor-vendor has entered into an installment land contract." *Id.* at 365 n.1, 550 P.2d at 1272 n.1. It remains unnecessary to confront this question in contexts other than the one before us.

During the pendency of this appeal, Congress passed the Garn-St. Germain Depository Institutions Act, 12 U.S.C. § 1701j-3 (1982). The Act became effective on October 15, 1982, and applies to state savings and loan associations. Basically, the Garn Act provides that, unless an exception applies, a state lender may "enforce a contract containing a due-on-sale clause with respect to a real property loan." *Id.* at § 1701j-3(b)(1). Specifically, the Act provides that "the exercise by the lender of its option pursuant to such a clause shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the lender and borrower shall be fixed and governed by the contract." *Id.* at § 1701j-3(b)(2). Valley Bank now contends that the Garn Act has preempted Nevada law in this area and renders enforceable the due-on-sale clause contained in paragraph 17 of the deed of trust. The original sale to the Boyeses, the subsequent transfer to Blake, and Valley Bank's attempt to accelerate the Boyeses' debt, however, all occurred before the effective date of the Garn Act. We therefore turn to consider what retroactive effect, if any, the Garn Act has on the present transaction.

We note that Congress in enacting the Garn Act included a "window" or grace period exception for loans made or assumed after state action restricted the enforcement of due-on-sale clauses. The "window periods" are specifically applicable only to those states which had at the time of the Act's enactment a constitutional or statutory provision prohibiting the exercise of due-on-sale clauses or a judicial decision to the same effect from the highest court of the state. *Id.* at § 1701j-3(c)(1). As noted above, Nevada had no such constitutional or statutory provision or judicial decision. The window period provisions of the Act,

therefore, would have no applicability to Nevada or to appellants' transaction, which preceded the Act.

For those states, like Nevada, that do not come within the "window period" provisions, the Act is silent as to whether there is to be any retroactive effect. A statute operates retroactively only if Congress clearly manifests an intent for the statute to have such effect. *See* United States v. Security Industrial Bank, 459 U.S. 70 (1982); Holloway v. Barrett, 87 Nev. 385, 390, 487 P.2d 501, 504 (1971); 2 Sands, Sutherland Statutory Construction § 41.04, at 252 (4th ed. 1973). Because the Garn Act contains no such clear manifestation of intent, but rather is totally silent on the issue as to those states not subject to the "window period" provisions, we decline to apply the Act to those transfers which, as here, occurred before the effective date of the Act. *See* Pioneer Federal Sav. and Loan Ass'n v. Reeder, 453 So.2d 126, 129 (Fla.Dist.Ct.App. 1984); North Community Bank v. Northwest Nat. Bank, 467 N.E.2d 1094, 1097 (Ill.App.Ct. 1984); Stenger v. Great Southern Sav. & Loan Ass'n, 677 S.W.2d 376, 381 n.7 (Mo.Ct.App. 1984); Home Sav. Bank v. Baer Properties, Ltd., 460 N.Y.S.2d 833 (N.Y.App.Div. 1983); Morris v. Woodside, 682 P.2d 905, 909 (Wash. 1984); *see also* Abrego v. United Peo. Fed. Sav. & Loan Ass'n, 664 S.W.2d 858 (Ark. 1984); Viereck v. Peoples Sav. and Loan Ass'n, 343 N.W.2d 30 (Minn. 1984). Consequently, since the Boyeses' sought to transfer the property to Blake before the effective date of the Garn Act, we hold that federal law does not preempt Nevada law in determining whether Valley Bank may accelerate the balance due under the Boyeses' deed of trust.

Having concluded that there is no federal preemption, we must next consider whether the due-on-sale clause in the present case is enforceable. In *First Commercial Title,* 92 Nev. 363, 550 P.2d 1271, this court held that a due-on-sale clause is automatically enforceable in the context of an outright sale. We rejected the view that places the burden of establishing justification for enforcement of the clause upon the beneficiary. It is nevertheless problematical whether this court would continue to adhere to its ruling in *First Commercial Title* if the issue were to be decided anew. Arguably, the rationale for denying automatic enforcement of a due-on-sale clause in the case of an outright sale is more compelling than under an installment land contract. In an outright sale, the beneficiary's position may be enhanced because the vendee becomes contractually liable to the beneficiary along with the trustor-vendor. Moreover, the vendee under an outright sale may make a more substantial down payment on the property than

a conditional vendee, thereby increasing the vendee's incentive not to default. Under the terms of an installment land contract, there may be no agreement by the conditional vendee to assume and pay the existing indebtedness secured by the trust deed. Instead, the conditional vendee may merely agree to pay the trustor-vendor the agreed price through a series of installment payments which, when fully satisfied, will entitle the conditional vendee to a deed from the trustor-vendor. The beneficiary may thus be placed in the position of having its security possessed by a party who has made a small initial investment and who has no position of liability vis-a-vis the beneficiary. On the other hand, of course, the trustor-vendor remains liable, in a continuing position of responsibility to the beneficiary, with concern for maintaining the value of the property; hence, the beneficiary commonly will not be prejudiced by an installment land contract.[3]

In any case, we are convinced that, absent evidence adduced by the beneficiary indicating a reduction in the value of its security stemming from the installment land contract, the due-on-sale clause, if enforced, constitutes an unreasonable restraint on the alienability of property.

The district court specifically found, and the parties do not dispute, that Valley Bank's "security is not in jeopardy of loss, waste or depreciation as a result of the contract of sale executed by appellants in that all payments due and payable have been tendered by appellants to Valley Bank, in a timely fashion." Valley Bank concedes that its sole reason for invoking its rights under the due-on-sale clause was to protect itself from the contingency of rising interest rates characteristic of the national economy since the purchase of the property by the Boyeses in 1978. We therefore conclude that with regard to this pre-Garn Act transfer of real property by means of an installment land sale contract, without a showing of substantial impairment of Valley Bank's security interest, Valley Bank will not be permitted to enforce the due-on-sale clause in its contract with appellants.[4]

---

[3]We note that in Tucker v. Lassen Savings and Loan Association, 526 P.2d 1169 (Cal. 1974), the California Supreme Court considered these factors and held that automatic enforcement of a due-on-sale clause is not justified by the execution of an installment land contract.

[4]In view of our determination that the due-on-sale clause, is unenforceable in this context, we need not reach appellants' contention that the transaction in question is expressly excluded from the operation of the due-on-sale clause as a "creation of a lien or encumbrance subordinate" to the deed of trust. See note 1, supra. It is arguable, however, that the clause itself is ambiguous or uncertain in its application to an installment land sale contract. Because the parties have not specifically addressed this question, we decline to reach the merits of this issue. Our decision in the present case, however, is not

Accordingly, we reverse the district court's order denying the request for a preliminary injunction. We remand this case for further proceedings consistent with this opinion, including the issuance of a permanent injunction precluding Valley Bank from enforcing the due-on-sale clause solely by reason of the transaction at issue here.[5]

---

intended to foreclose the contention in future post-Garn Act cases that acceleration clauses like the one involved here fail adequately to embrace installment land sale contracts.

[5]The Honorable CLIFF YOUNG, Justice, did not participate in the consideration of this matter.