## Richmond

### ALBERT B. LIPPS, ET. AL.

### V.

### FIRST AMERICAN SERVICE CORPORATION, ET AL.

January 22, 1982.

Record No. 800908.

Present: Carrico, C.J. Cochran, Poff, Compton, Thompson, and Stephenson, JJ., and Harrison, Retired Justice.

132

*Joseph E. Bankert; Robert E. Swan (Brock & Bankert,* on brief), for appellants.

*Richard R. Nageotte (Carol L. Hill; Robert J. Zelnick; Nageotte, Borinsky & Zelnick,* on brief), for appellees.

*Amicus Curiae: Virginia Savings and Loan League (A. J. Grent; Lee F. Davis, Jr.; Peter E. Broadbent, Jr.; Christian, Barton, Epps, Brent & Chappell,* on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

In this appeal we determine the validity of a "due-on sale" acceleration clause in a deed of trust. The trial court upheld the validity of the clause, and we affirm that judgment.

On July 27, 1976, Albert B. Lipps and Judith W. Lipps (Borrowers) executed a deed of trust conveying residential real estate in Prince William County to secure First American Savings and Loan Association (Lender) the payment of a promissory note for $31,500 with interest at the rate of nine and one-half percent per annum. The deed of trust contained the following "due-on sale" acceleration provision (Covenant 17):

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

. . . .

17. *Transfer of the Property: Assumption.* If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent . . . Lender may, at Lender's option, declare all the sums secured by this Deed of Trust to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Deed of Trust shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement ac-

cepted in writing by Lender, Lender shall release Borrower from all obligatons under this Deed of Trust and the Note.

Pursuant to Code § 6.1-330.34[1], the deed of trust also contained this notice in the margin of the first page: "NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED."

On April 21, 1979, Borrowers entered into a "Land Contract for Sale of Improved Real Property-Virginia" (Land Contract) with Sandmar Associates, Inc. (Purchaser). In the Land Contract, Purchaser agreed to pay to Borrowers at closing a lump sum of $5,400, to take possession of the property and make all payments due under the note secured by the deed of trust, and to hold Borrowers harmless from any liability under the deed of trust. Borrowers agreed to execute a general warranty deed to be held in escrow until payment by Purchaser of the remaining balance of $30,986.97 due on the note at the time of closing.

Borrowers and Purchaser closed under the Land Contract on May 10, 1979, and settlement between the parties reflected the charges made in a typical real estate closing. On May 14, 1979, Purchaser recorded the Land Contract in the Clerk's Office of the Circuit Court of Prince William County.

Lender became aware of the Land Contract on October 22, 1979, and after investigation, gave notice to Borrowers and Purchaser on November 18, 1979, that it was exercising its option to declare the balance on the deed of trust note immediately due and payable.

Lender offered to let Purchaser assume the loan, provided that Purchaser (i) make application to assume the loan with satisfactory credit, (ii) pay two "points" (a two percent assumption fee)

---

[1] Code § 6.1-330.34. *Mortgage, etc., to contain notice that debt is subject to call or modification on conveyance of property.* Where any loan is made secured by a mortgage or deed of trust on real property . . . and the note, or mortgage or deed of trust evidencing such loan contains a provision that the holder of the note secured by such mortgage or deed of trust may accelerate payment of or renegotiate the terms of such loan upon sale or conveyance of the security property or part thereof, then the mortgage or deed of trust shall contain in the body or on the margin thereof a statement, either in capital letters or underlined, which will advise the borrower as follows: "Notice — The Debt secured hereby is subject to call in full or the terms thereof being modified in the event of sale or conveyance of the property conveyed."

on the outstanding note balance, and (iii) allow the interest to be increased to thirteen and one-quarter percent.

Purchaser refused to make an application to assume the loan. Neither Borrowers nor Purchaser paid the outstanding balance due on the deed of trust note as a result of Lender's exercise of Covenant 17. On January 7, 1980, the Trustee under the deed of trust gave notice of the proposed sale of the property. Borrowers and Purchaser petitioned the lower court to enjoin the sale, but it denied such injunctive relief.

On appeal, Borrowers contend that Convenant 17 is invalid as an unreasonable restraint on alienation. They assign error to the action of the lower court upholding its validity, especially where Lender did not prove impairment of security or risk of nonpayment, and to the holding of the trial court that the execution and delivery of the Land Contract was a breach of Covenant 17.

## I.  *Restraint on Alienation.*

█ Is Covenant 17 an unreasonable restraint on alienation? We hold that it is not. In *Hutchinson* v. *Maxwell,* 100 Va. 169, 175, 40 S.E. 655, 657 (1902), we restated the general rule:

> It is well settled in this country and in England, from which country we derive the principles of our jurisprudence, that a gift or grant of a beneficial estate, in fee or absolutely, whether legal or equitable, has certain legal incidents of which the estate cannot be divested, and all conditions adopted for that purpose are necessarily repugnant and void. Among those incidents are the donee's or grantee's power of alienating such estate, and its liability for his debts. [Citations omitted.]
>
> The reasons for this doctrine or principle is the repugnancy of such restraints upon the ordinary rights of property, and that property would thereby be withdrawn from the ordinary rules and channels of commerce and trade.

Since that time, we have had occasion to recognize statutory exceptions to the doctrine in *Sheridan* v. *Krause,* 161 Va. 873, 172 S.E. 508 (1934) (upholding validity of spendthrift trusts), and to define "reasonableness" in this context in *Hercules Powder Company* v. *Continental Can Company,* 196 Va. 935, 940, 86 S.E.2d 128, 131 (1955):

The reasonableness of a restraint on the use of property "is to be determined by considering whether it is such only as to afford a fair protection to the interest of the party in favor of whom it is given, and not so large as to interfere with the interest of the public." *Merriman* v. *Cover,* 104 Va. 428, 51 S.E. 817 [1905].

The Supreme Court of North Carolina faced this identical problem in *Crockett* v. *First Federal Savings, etc.,* 289 N.C. 620, 625-26, 224 S.E.2d 580, 584 (1976), and said:

One factor that significantly affects the nature of this acceleration clause so far as the restraints doctrine is concerned is the fact that the creditor's right to accelerate arises only when the realty is alienated. Thus, the practical effect of the due-on-sale clause when it is considered in isolation is that the owner is encouraged not to alienate his property *if* it would be more advantageous to enjoy a loan which has become favorable because of changed interest rates in the market. This is what may be termed a hindrance or an indirect restraint on alienation. As defined in L. Simes and A. Smith, *The Law of Future Interests* § 1112 (2d Ed. 1956), "An indirect restraint on alienation arises when an attempt is made to accomplish some purpose other than the restraint of alienablity, but with the incidental result that the instrument, if valid, would restrain practical alienability."

The present state of the law is summarized in 3 L. Simes and A. Smith, *The Law of Future Interests* § 1164 (2d Ed. Supp. 1981), where the author states:

Mortgages payable in installments often contain provisions entitling the mortgagee to declare the entire balance due if the mortgagor's interest in the mortgaged premises is transferred. Such acceleration clauses have usually been enforced in accordance with their terms but there is some authority that they are invalid as restraints on alienation or, alternatively, that a court of equity will deny enforcement in the absence of a showing that the transfer jeopardized the mortgagee's security.

For amplication, see cases there cited. See also Annot., 69 A.L.R. 3d 713 (1976). For typical cases upholding the validity of the clause, see *Crockett v. First Federal Savings, etc., supra,* and *Occidental Savings and Loan Association v. Venco Partnership,* 206 Neb. 469, 293 N.W.2d 843 (1980). For contrary cases, see *Silver v. Rochester Savings Bank,* 73 A.D.2d 81, 424 N.Y.S.2d 945 (1981), and *Wellenkamp v. Bank of America,* 148 Cal. Rptr. 379, 582 P.2d 970 (1978). For an elaborate treatment of the whole subject, including its comment on the instant case while pending in the trial court, see *Williams v. First Federal,* 651 F.2d 910 (4th Cir. 1981).

■ Our analysis of the language used in Covenant 17 shows that enforcement of the covenant does not defeat or forfeit the estate conveyed. The transaction does not affect the quantity or quality of the conveyance between Borrowers and Purchaser. Its effect is confined to the acceleration of the due date of the indebtedness.

■ Since public policy is at the heart of this controversy, we repeat observations previously made. In *Wallihan v. Hughes,* 196 Va. 117, 125, 82 S.E.2d 553, 558 (1954), we stated:

> The law looks with favor upon the making of contracts between competent parties upon valid consideration and for lawful purposes. Public policy has its place in the law of contracts — yet that will-o'-the-wisp of the law varies and changes with the interests, habits, need, sentiments and fashions of the day, and courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain.

Code § 55-59 details elaborate provisions governing deeds of trust whether actually written therein or not:

> Every deed of trust to secure debts . . . unless otherwise provided . . . shall be construed to impose and confer upon the parties thereto, and the beneficiaries thereunder, the following duties, rights, and obligations in like manner as if the same were expressly provided for by said deed of trust:
> (1) The deed shall be construed as given to secure the performance of each of the covenants entered into by the grantor, as well as the payment of the primary obligation.
>  . . . .

(6) In the event of default in the payment of the debt secured, or any part thereof, at maturity, or in the payment of interest when due, *or of the breach of any of the covenants entered into or imposed upon the grantor,* then at the request of any beneficiary the trustee shall forthwith declare all the debts and obligations secured by the deed of trust at once due and payable.

Thus, a general acceleration clause is read into every deed of trust unless otherwise provided in the instrument. *Devany v. Colgin,* 163 Va. 848, 178 S.E. 15 (1935). This acceleration clause covers the breach of any covenant imposed by the instrument on the grantor. This obviously would include a covenant not to convey the secured property without the consent of Lender.

A further clue to public policy questions is the chronology of events in the enactment of Code § 6.1-330.34. Its antecedent, Acts 1974, c. 292, added Code § 6.1-2.4 to the Code.[2] As pointed out on brief, this last act began its legislative journey as House Bill 601,[3] entirely different in purpose and effect from the final enactment. Acts 1975, c. 448, recodified Code § 6.1-2.4 with slight variation as it is in the present Code § 6.1-330.34. Thus, the General Assembly, instead of prohibiting acceleration upon sale or transfer, expressly recognized its existence and provided that it should be adequately publicized. As indicated in *Williams* v. *First Federal,* 651 F.2d at 923-24, if this be a restraint on alienation, it is one validated by Virginia law as an inescapable conclusion from this statutory enactment.

---

[2] Code § 6.1-2.4. Where any loan is made secured by a mortgage or deed of trust on real property comprised of one-to-four family residential dwelling units and the note, or mortgage or deed of trust evidencing such loan contains a provision that the holder of the note secured by such mortgage or deed of trust may accelerate payment of or renegotiate the terms of such loan upon sale or conveyance of the security property or part thereof, then the mortgage or deed of trust shall contain in the body or on the margin thereof the following statement either in capital letters or underlined: "Notice — The debt secured hereby is subject to call in full or the terms thereof being modified in the event of sale or conveyance of the property secured hereby."

[3] *House Bill No. 601.* § 6.1-2.3. No financial institution, subject to the provisions of this title, which makes loans secured by real property, shall reserve in the instrument evidencing such loan or in the deed of trust on the real property serving as security for such loan the right to call the loan or renegotiate the terms of the loan upon the sale of the real property acting as security so long as the original borrower remains liable for repayment of the loan.

■ Borrowers and Purchaser would have us read into the acceleration clause a proviso that in the event of a sale or transfer the acceleration clause would not be operative unless the transfer or sale would impair the security of the lender or otherwise increase its risk. In *White* v. *Commonwealth,* 158 Va. 749, 757, 164 S.E. 375, 377 (1932), we quoted *Stonega Coal & Coke Co.* v. *Louisville & N.R.Co.,* 106 Va. 223, 55 S.E. 551 (1906), stating our general view in construing written contracts:

> While the court, in construing a contract, may take into view the circumstances under which it was made, yet when a breach of it is averred its language must determine to what the parties to it bound themselves. Courts are not authorized to make contracts for them or to add to any stipulation which they have not seen proper to insert.

*See also Sonny Arnold, Incorporated, et al.* v. *Sentry Savings Assocation, et al.,* 615 S.W.2d 333, 339 (Tex. Civ. App. 1981).

■ Our conclusion is that Covenant 17 is not an unreasonable restraint on alienation and to the contrary has been sanctioned as part of the public policy of the Commonwealth.

## II. *Land Contract.*

■ Borrowers and Purchaser argue that the Land Contract does not trigger Covenant 17. They argue that it is a contract contingent upon the payoff of the deed of trust at which time a deed is to be recorded; it is neither a transfer of title nor a sale under the terms of the due-on sale clause. We reject this contention.

This instrument is denominated "Land Contract for Sale of Improved Real Property-Virginia." It provides that Purchaser would make a lump-sum payment of $5,400 at closing; Borrowers would execute a general warranty deed to Purchaser, the deed to be held in escrow until the note secured by the deed of trust had been paid in full; Purchaser would have full possession of the property after closing and would assume all risks or loss; Purchaser would assume all responsibility for taxes and insurance on the property and appoint the escrow agent as attorney-in-fact in all matters concerning the property. As a practical matter, Borrowers, except for original liability, had relinquished all beneficial interest in the property. Covenant 17 provides for the activating of its provisions

"if all or any part of the property or an interest therein is sold or transferred by Borrowers."

*Sale* v. *Swann,* 138 Va. 198, 208, 120 S.E. 870, 873 (1924), is controlling, and there we said:

> When such a contract is concluded, although it is wholly executory in form, it clothes the purchaser with an equitable estate in the land and the vendor with an equitable ownership of the purchase money. This because equity treats that as done which ought to be done by the terms of such a contract, and as the land ought to be conveyed to the vendee and the purchase money transferred to the vendor, equity regards these as done, and treats the vendee as having acquired property in the land, and the vendor as having acquired property in the price. It follows that as the vendee has thus acquired the full equitable estate, he may convey or encumber it, devise it; if he dies intestate it descends to his heirs at law; his wife is entitled to dower in it, and specific performance may be enforced against his heirs at law after death. In fact, all the incidents of a real ownership belong to it.

*Accord, Carmichael* v. *Snyder,* 209 Va. 451, 455, 164 S.E.2d 703, 706 (1968).

We therefore hold that Covenant 17 of the deed of trust was breached by the execution of the Land Contract by Borrowers and Purchaser on April 21, 1979.

Finally, we believe state law clearly establishes the validity of Covenant 17,[4] and we need not consider the complaint of Borrowers and Purchaser that the trial court relied in part on federal law to sustain its judgment.

*Affirmed.*

---

[4] The deed of trust expressly provides in part:

15. *Uniform Deed of Trust; Governing Law; Severability.* This form of deed of trust combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property. *This Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located.* [Emphasis added.]