Neil K. STENGER, Beverly Stenger, Ronald K. Stenger, Lezah Stenger, and Ralph W. Stenger, Plaintiffs-Appellants,

v.

GREAT SOUTHERN SAVINGS AND LOAN ASSOCIATION and Great Southern Financial Corporation, Defendants-Respondents.

No. 13121.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 27, 1984.

378

James D. Tucker, Harrison, Tucker & Geisler, Springfield, for plaintiffs-appellants.

Patrick T. Fish, Springfield, for defendants-respondents.

GREENE, Judge.

Plaintiffs, Neil K. Stenger, Beverly Stenger, Ronald K. Stenger, Lezah Stenger and Ralph W. Stenger (the Stengers), filed an action in three counts seeking to enjoin foreclosure on certain real estate under a deed of trust which secured a promissory note executed by the Stengers. Installment payments on the note had been accelerated by the secured party and demand made for the whole balance due. Defendants were Great Southern Savings and Loan Association (Great Southern) and the successor trustee for the deed of trust, Great Southern Financial Corporation.

■ The loan acceleration and threatened institution of foreclosure proceedings were claimed to be justified by Great Southern by reason of a "due-on-sale" clause [1] in the note, and the fact the Stengers had conveyed the property in question to another person without obtaining the written consent of Great Southern as required by the clause.

Plaintiffs and defendants filed motions for summary judgment. The trial court sustained defendants' motion as to Counts I and III of the Stengers' petition, and, after hearing the evidence offered by plaintiffs on Count II, sustained defendants' motion for judgment made at that stage of the case. The Stengers then appealed to this court.

There is no real dispute as to the basic facts of this case. On April 4, 1973, the Stengers executed a first mortgage note in the sum of $290,000 payable to Great Southern, and they executed a deed of trust whereby property known as Cheri Park Apartments, located in Greene County, Missouri, was made security for payment of the note. The note contained the following due-on-sale provision:

"[I]f makers convey any of the property described in the deed of trust securing this note without the written consent of the holder ... the holder of this note may, at the option of such holder, declare all unpaid indebtedness evidenced by this note ... immediately due and payable ...."

Prior to November, 1977, plaintiff Ronald K. Stenger, who is an attorney and is well-versed in real estate and lending transactions, and who was acting on behalf of all the Stengers, contacted Richard Huff, vice-president of Great Southern, to see what Great Southern's position would be if the mortgaged property was conveyed. The response was that Great Southern would consider a loan assumption agreement if the loan's interest rate was increased. In November of 1977, the Stengers conveyed the property by warranty deed to Vaughn C. Zimmerman without

---

1. A due-on-sale clause is a specialized type of acceleration clause whereby the secured party in a land mortgage transaction has the option of declaring the entire balance of debt due and payable in the event the mortgagor transfers the real estate without the consent of the secured party. Osborne, Nelson & Whitman, Real Estate Finance Law § 5.21 (1979).

having obtained the written consent of Great Southern. At that time, the Stengers "knew that there was going to be some problems with Great Southern."

The purchase by Zimmerman was financed by a note and deed of trust to the Stengers which, incidentally, contained a stringent due-on-sale clause. The second mortgage created by these instruments was described as a "wraparound" whereby the obligation to the Stengers incorporated that of the Stengers to Great Southern, and at a rate of interest in excess of that being paid to Great Southern. Under this arrangement, Zimmerman made payments only to the Stengers, and the Stengers continued their payments as usual to Great Southern. Neither party informed Great Southern of the sale.

In March of 1981, after discovery of the sale to Zimmerman, Richard Huff advised Ronald Stenger in writing that because of the conveyance to Zimmerman without the written consent of Great Southern, the association elected to declare the unpaid indebtedness on the note it held immediately due and payable. The Stengers then filed their present suit to enjoin the initiation of foreclosure procedures.

Count I of plaintiffs' amended petition sought to enjoin enforcement of the due-on-sale clause on the grounds it was unconscionable, inequitable and in violation of public policy. Count II proceeded on a theory that Great Southern had effective knowledge of the conveyance to Zimmerman, yet waited for over three years to act, a delay they claimed gave rise to estoppel and laches. Count III alleged that "[i]n response to" the intention to foreclose, the Stengers and Zimmerman rescinded their earlier transaction by a deed from Zimmerman back to the Stengers, accompanied by a release of Zimmerman, so that Great

Southern's acceleration right was thus negated and destroyed.

These pleaded theories define, in effect, the three attacks made by the Stengers in this appeal on the adverse judgment entered below.

## GENERAL ENFORCEMENT OF DUE–ON–SALE CLAUSES

The essence of plaintiffs' first point relied on is that Missouri policy favors due-on-sale clauses only to the extent that a conveyance demonstrably impairs the mortgagee's security. Thus, it is argued, the trial court erred in granting summary judgment for defendants in that a genuine issue of material fact was raised which could only have been resolved by a trial on the merits. Rule 74.04(c).[2]

In their answer to plaintiffs' first count, defendants pleaded § 369.259[3] as an affirmative statutory declaration of their right to enforce the due-on-sale clause according to its plain tenor. That statute reads:

"In the event of a conveyance or transfer of any property upon which an association has a lien without the consent of the association, the association may proceed as provided in the note or security instrument."

It is apparently conceded that Great Southern is an "association" for purposes of the statute, being a savings and loan association chartered by the state of Missouri. § 369.014. In this appeal, plaintiffs present a vigorous and multipronged argument that § 369.259 is unconstitutional, but that, in any event, § 408.552 more accurately expresses our public policy.[4] That policy, it is further argued, is in line with the view of a number of courts which have considered due-on-sale clauses as being en-

---

2. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1978, V.A.M.S.

3. The statute cited was in effect at all times relevant to the present case.

4. Section 408.552, enacted in 1979, applies to certain small loans, retail credit transactions and to second mortgages on residential real estate. § 408.551. It says that a covered agreement concerning default is enforceable only to the extent that a borrower fails to make a required payment or the lender's prospect of satisfaction is significantly impaired.

forceable only if the lender's security is impaired by a conveyance.[5]

■ We first observe that the arguments which have been advanced in favor of no, or of only conditional, enforcement of due-on-sale clauses have largely dissipated in the face of affirmative federal preemption by rules of law which are quite favorable to the clauses. This began in 1976 with a regulation of the Federal Home Loan Bank Board which expressly permitted any federally-chartered savings and loan association to use due-on-sale clauses in mortgage instruments. 12 C.F.R. § 545.8–3(f).[6] The trend continued with the promulgation of 12 C.F.R. § 701.21–6(d) under which federal credit unions are required to use due-on-sale clauses in preemption of any state restrictions on enforcement. The most sweeping scope of federal preemption is now found in Section 341 of the Garn-St. Germain Depository Institutions Act of 1982, P.L. 97–320; 12 U.S.C. § 1701j–3. With certain complex exceptions regarding time, the statute generally provides that a lender (meaning *any* person or government agency making a real property loan, or any assignee or transferee thereof) may enforce a due-on-sale clause as written in spite of a contrary provision in the constitution, laws or judicial decisions of the state, in the event of a transfer of the mortgaged property occurring on or after October 15, 1982.[7]

We also must note that in those jurisdictions which have found it necessary to determine the enforceability of due-on-sale clauses,[8] a definite majority trend is apparent toward a general right to invoke the clauses without a showing of impairment of security. A partial list includes: *Tierce v. APS Co.,* 382 So.2d 485 (Ala.1979); *Olean v. Treglia,* 190 Conn. 756, 463 A.2d 242 (1983); *Lake v. Equitable Savings & Loan Ass'n.,* 105 Idaho 923, 674 P.2d 419 (1983); *Martin v. Peoples Mutual Savings & Loan Ass'n.,* 319 N.W.2d 220 (Iowa 1982); *First National Bank of Vicksburg v. Caruthers,* 443 So.2d 861 (Miss.1983); *Occidental Savings & Loan Ass'n. v. Venco Partnership,* 206 Neb. 469, 293 N.W.2d 843 (1980); *Mills v. Nashua Federal Savings & Loan Ass'n,* 121 N.H. 722, 433 A.2d 1312 (1981); *Lincoln Mortgage Investors v. Cook,* 659 P.2d 925 (Okla.1982); *Gunther v. White,* 489 S.W.2d 529 (Tenn.1973); *Sonny Arnold, Inc. v. Sentry Savings Ass'n.,* 633 S.W.2d 811 (Tex.1982); *Redd v. Western Savings & Loan Co.,* 646 P.2d 761 (Utah 1982); *Lipps v. First American Service Corp.,* 223 Va. 131, 286 S.E.2d 215 (1982).

■ Next, we observe that if we are required to undertake a determination of the questioned validity of § 369.259, it is clear we would have no jurisdiction of this appeal. Mo. Const. art. V, § 3. This is so

---

**5.** *E.g., Wellenkamp v. Bank of America,* 21 Cal.3d 943, 148 Cal.Rptr. 379, 582 P.2d 970 (1978); *State ex rel. Bingaman v. Valley Savings & Loan,* 97 N.M. 8, 636 P.2d 279 (1981). For discussion of the range of views and the policy considerations which have informed the judicial treatment of due-on-sale clauses, see Annot., 69 A.L.R.3d 713 (1976).

**6.** The efficacy of the regulation was upheld as against a state policy (California) which prohibited acceleration for purely economic reasons and allowed it only upon a showing of impairment of security. *Fidelity Federal Savings & Loan Ass'n. v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

**7.** The effective date of the act figures in its provisions regarding "window periods" whereby certain mortgages and transfers in states which had laws or judicial decisions of statewide applicability limiting enforcement of due-on-sale clauses are given some freedom from preemption. 12 U.S.C. § 1701j–3(c). Arguments that the act is retroactive as to those states not subject to the window periods (i.e., having no prior express policy against free enforcement of due-on-sale clauses) have been unsuccessful. *Viereck v. Peoples Savings & Loan Ass'n.,* 343 N.W.2d 30, 34–35[5] (Minn.1984); *Home Savings Bank v. Baer Properties, Ltd.,* 92 A.D.2d 98, 460 N.Y.S.2d 833, 835[3, 4] (1983). We likewise assume the act is not dispositive in this case where the triggering transfer occurred before October 15, 1982.

**8.** Previous Missouri cases on due-on-sale clauses have not addressed their validity because not challenged by the affected parties. *Great Southern Savings & Loan Ass'n v. Jefferson Properties, Inc.,* 661 S.W.2d 68 (Mo.App.1983); *Arend v. Great Southern Savings & Loan Ass'n,* 611 S.W.2d 381 (Mo.App.1981).

despite the fact the parties have agreed otherwise. *Champlin Petroleum Co. v. Brashears*, 592 S.W.2d 545, 547[5] (Mo. App.1979). However, a combination of principles convinces us that we must retain the case.

■ Plaintiffs claim the statute, quoted above, is unconstitutionally vague and uncertain as to what kind of "conveyance or transfer" would allow an association to invoke a due-on-sale provision, and as to what manner of "consent" will relieve the possibility of acceleration, and as to what kinds of ways an association lawfully "may proceed as provided in the note ...." They also attack the statute as being special legislation in violation of article III, § 40(28) of the Missouri Constitution. The special legislation argument was not raised in the trial court. This failure waives the ground asserted as an attack on the validity of the statute. *Bauldin v. Barton County Mutual Ins. Co.*, 666 S.W.2d 948, 951[3] (Mo.App.1984); *State v. Tatum*, 653 S.W.2d 241, 242–243[1, 2] (Mo.App.1983).

■ As to the vagueness and uncertainty argument, we note that this ground was raised below by plaintiffs' reply to defendants' answer which had cited the statute as authorizing enforcement of due-on-sale clauses. The reply made a general assertion that the statute was "vague, overbroad and indefinite." In argument to the trial court, plaintiffs' counsel stated the statute was unconstitutional on the grounds "set forth in my reply." In its conclusions, the trial court merely noted that the due-on-sale clause was "a duly authorized and valid provision." We find no indication the precise complaints now raised were before the trial court. What was done was to make a merely colorable argument of invalidity to the trial court. Such fails to preserve the matter and is not sufficient to remove jurisdiction from this court. *State v. Charity*, 637 S.W.2d 319, 321[2] (Mo.App.1982); *Forbis v. Associated Wholesale Grocers, Inc.*, 513 S.W.2d 760, 766–767[8] (Mo.App.1974).

■ Even if we were authorized to judge the validity of § 369.259, it is not necessary to do so. The question of the constitutional invalidity of a statute will be ruled only when essential to disposition of a case. *See State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 227[1] (Mo. banc 1982); *Brooks v. Land Clearance for Redevelopment Authority*, 414 S.W.2d 545, 546–547[2] (Mo.1967). Here, the statute's absence would simply leave all first mortgagees on the same footing; its presence does not create an exception to positive law and allow associations to enforce provisions which are necessarily prohibited to other lenders similarly situated. Plaintiffs' argument that § 408.552 fills the gap and makes Missouri an "impairment of security" jurisdiction is flawed. That statute simply does not apply. Chapter 408 creates a number of special rules peculiar to second mortgages. We know of no principle of statutory construction that would enlarge its scope beyond its plain limitations. See *Giloti v. Hamm-Singer Corp.*, 396 S.W.2d 711, 713[1] (Mo.1965).[9]

■ We think it would be unsettling to hold that some first mortgagees could enforce their contracts as written while others could not depending on such factors as who they are or the precise time the offending transfer occurred. Given the trend toward general enforceability of due-on-sale clauses, magnified by favorable federal preemption, we hold that the present clause was not restricted in the manner plaintiffs urge in their Point I, so that summary judgment thereon was properly entered against them. The clause used here was clear and express, as is required of contractual acceleration provisions. *Morris v. Granger*, 675 S.W.2d 15, at 17 (Mo.App., S.D., 1984). It was known to, and well understood by, plaintiffs; they simply decided to take their chances with a tempting sale opportunity. The ground of avoidance sought is a blanket rule requir-

---

9. We also emphasize it is not necessary for us to determine whether § 408.552 creates a require- ment of showing impairment of security even in the case of a second encumbrance.

ing a showing of impairment of security, and we find no place for that rule in Missouri law.

## NOTICE AND FAILURE TO ACT

In their second point relied on, the Stengers say that they established that Great Southern had knowledge of the conveyance to Zimmerman, and effectively consented to the transfer by a failure to act. Their theory is that enforcement of the due-on-sale clause, which commenced with acceleration of the loan in March of 1981, was barred by estoppel and laches. A great deal of argument is directed to evidence which is said to show that Great Southern had notice of the conveyance while "it sat idly on its corporate hands."

▄▄▄ However, we do not interpret the evidence presented to the trial court as plaintiffs do. At the close of plaintiffs' case, defendants made a motion for "directed verdict" which, in due course, was sustained. Thereafter, the court made written findings and conclusions, including a determination that plaintiffs failed to maintain their burden under Count II. There is, of course, no verdict in a court-tried case. An anomalous motion for a directed verdict, therefore, is treated as submitting the issues on their merits for the court's decision. *Moser v. Williams*, 443 S.W.2d 212, 215[2] (Mo.App.1969). The result is that appellate review is governed by the familiar principles of *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). *Brassfield v. Allwood*, 557 S.W.2d 674, 677–678[6, 7] (Mo.App.1977). Thus, we must sustain the judgment unless it lacks substantial evidence, is against the weight of the evidence, or unless it erroneously declares or applies the law.

▄▄▄ With these limitations in mind, we observe that the equitable defenses of

laches and estoppel[10] are closely related. *Schwind v. O'Halloran*, 346 Mo. 486, 142 S.W.2d 55, 60[13] (1940); *Larson v. Crescent Planing Mill Co.*, 218 S.W.2d 814, 821[6] (Mo.App.1949). Both are unfavored theories. *G.M. Morris Boat Co., Inc. v. Bishop*, 631 S.W.2d 84, 88[12] (Mo.App. 1982); *Lake Development Enterprises, Inc. v. Kojetinsky*, 410 S.W.2d 361, 368[15] (Mo.App.1966). Every fact required to create an estoppel must appear by clear and satisfactory evidence. *G.M. Morris Boat Co., Inc. v. Bishop*, supra, 631 S.W.2d at 88[11]; *State ex inf. Voigts v. City of Pleasant Valley*, 453 S.W.2d 700, 706[14] (Mo.App.1970). Although there are many descriptive formulas, laches has been said to be neglect for an unreasonable and unexplained time, under circumstances permitting diligence, to do what in law should have been done, and estoppel arises from the unfairness of permitting a party to belatedly assert rights if he knew of those rights but took no steps to enforce them until the other party has, in good faith, become disadvantaged by changed conditions. *Metropolitan St. Louis Sewer Dist. v. Zykan*, 495 S.W.2d 643, 656[18] (Mo. 1973); *Missouri Federation of the Blind v. National Federation of the Blind of Missouri, Inc.*, 505 S.W.2d 1, 8–10[13, 21] (Mo. App.1973). Furthermore, and not without pertinence to the present case, a court considering estoppel and laches should give regard to the equities and conduct of all the parties. *Abrams v. Lakewood Park Cemetery Ass'n.*, 355 Mo. 313, 196 S.W.2d 278, 286[13] (1946).

▄▄▄ As indicated by the above, knowledge of the situation is required by the one against whom laches is asserted. *Rich v. Class*, 643 S.W.2d 872, 876–877[6] (Mo.App.1982); *McDaniel v. Frisco Employes' Hospital Ass'n.*, 510 S.W.2d 752, 756[3] (Mo.App.1974). This is likewise true

---

10. These "defenses" were in this case asserted by plaintiffs. However, we do not regard the status of the parties as an issue in that plaintiffs were resisting the positive claim of defendants to a right to accelerate and foreclose. *See Clark v. Ferguson*, 346 Mo. 933, 144 S.W.2d 116, 118[5] (1940). Further, it is recognized that equitable defenses apply as against acceleration clauses, and such is stated in a number of cases upholding due-on-sale clauses where the mortgagees were sued to enjoin enforcement. *See Sonny Arnold, Inc. v. Sentry Savings Ass'n.*, supra, 633 S.W.2d at 815[4]; *Martin v. Peoples Mutual Savings & Loan Ass'n*, supra, 319 N.W.2d at 231.

of estoppel. *G.M. Morris Boat Co. v. Bishop*, supra, 631 S.W.2d at 89[13, 14]. We also appropriately observe that a corporation may acquire knowledge or notice only through its officers and agents. *Medicine Shoppe International, Inc. v. J-Pral Corp.*, 662 S.W.2d 263, 270[7] (Mo.App. 1983).

The trial court found that the first real notice occurred in early 1981 when Richard Huff was shown an insurance binder which included Zimmerman among the named insureds. The court concluded that this was Great Southern's first notice and that no conduct occurred which would constitute estoppel or laches. We find ample support in the record for such reasoning.

Plaintiffs claim that they proved notice in three forms: implied, actual and imputed. The first two of these are grounded on two sets of communications: (1) at least two conversations between Ronald Stenger and Tom Clopton, a purported agent of Great Southern, the point of which concerned problems the Stengers were having getting an insurance policy on the real estate released for purposes of an unearned premium refund; and (2) certain insurance documents which apparently found their way into a loan servicing file at Great Southern as a result of Zimmerman making insurance arrangements which included himself as a named insured, along with two release forms signed by Richard Huff, one in 1978 releasing the Stengers' original policy. Clopton worked at the time in "sales" with the insurance department of Great Southern Financial Corporation, the companion defendant (successor trustee) in this action.[11] Huff was at all pertinent times an officer of Great Southern in charge of its real estate loan department.

Appellants refer to the second set of communications mentioned above as establishing "implied knowledge." As we understand it, they place reliance on the mere presence of insurance binders and policies listing Zimmerman as a named insured in the loan service file. They couple this with the fact that Huff, who shortly before accelerating the loan did come to know of a probable conveyance from one of the insurance documents, was in charge of loan activities at Great Southern and had routinely signed the release forms mentioned.

We do not believe this set of circumstances is tantamount to knowledge by Great Southern.

It is true that knowledge for purposes of equitable defenses need not always be actual as circumstances and a duty to be vigilant may combine to make a party deemed knowledgeable of what the exercise of his required vigilance would have disclosed. *Russell v. Russell*, 427 S.W.2d 471, 478[5] (Mo.1968). This is not the case here. We know of no principle that would require a financial institution to screen documents routinely received and filed for indirect clues which might affect its remedies. Also, Huff testified he did not recall releasing the Stengers' policy or signing the other release form. He related he simply would have known that someone below him had verified that adequate substitute coverage was in place, and that he signed many such forms.

As to the status of Clopton, the trial court found that he was never an employee of Great Southern. Plaintiffs make a rather unfounded argument that Clopton was shown to be an agent for Great Southern merely because people sometimes called him about insurance matters on property mortgaged to Great Southern, and he sometimes would, as an accommodation, check in the loan service files of Great Southern to see about coverages in place. There is no suggestion that the particular conversations between Ronald Stenger and Clopton now depended or had any purpose but to facilitate a refund on the grounds substitute coverage had been furnished. There is no argument, and

11. Defendant Great Southern Financial Corporation was not appointed successor trustee until

after Great Southern had accelerated the Stengers' note.

no evidence to suggest, that Great Southern in any manner clothed Clopton with general authority over its loan affairs. An agency is not presumed by virtue of a third party's assumption that it exists, or by virtue of the conduct alone of the purported agent. *Dudley v. Dumont,* 526 S.W.2d 839 (Mo.App.1975); *Dierks & Sons Lumber Co. v. Morris,* 404 S.W.2d 229 (Mo.App. 1966). Even if, which is uncertain, Clopton knew a transfer had occurred, there is no basis for saying this "actual knowledge" belonged to Great Southern. *Cf. Packard Mfg. Co. v. Indiana Lumbermens Mutual Ins. Co.,* 356 Mo. 687, 203 S.W.2d 415, 421[7] (banc 1947). We emphasize that the only evidence of any notice by any employee of Great Southern of the presence of a possible interest of Zimmerman in the property on the basis of insurance documents is that which Huff obtained in early 1981 and on which he then acted. Plaintiffs' attempts to qualify the insurance testimony as the clear evidence required for the assertion of estoppel and laches did not convince the trial court, and does not convince us.

■ The "imputed knowledge" that appellants assert is based on the fact the conveyance to Zimmerman was promptly recorded. Therefore, they argue, the Missouri recording statute is sufficient by its very terms to "impart notice to all persons of the contents thereof." § 442.390. However, the statute goes on to specify that it is "subsequent purchasers and mortgagees" who are bound by the notice, and this is supported by authority which notes the statute has no application to one who already has acquired his interest before some new document is recorded affecting the land. *Lustenberger v. Hutchinson,* 343 Mo. 51, 119 S.W.2d 921, 927[8] (1938); *Henson v. Wagner,* 642 S.W.2d 357, 362 (Mo. App.1982). It has been Missouri law for almost 100 years that one holding a deed of trust is imparted no notice by the recording of a subsequent conveyance, for he "is not bound to search the records to see if his mortgagor makes subsequent deeds." *Meier v. Meier,* 105 Mo. 411, 16 S.W. 223,

228–229 (1891). Plaintiffs' contention has no merit.

We find no error in the trial court's rulings on the estoppel and laches issues.

## RESCINDING THE CONVEYANCE

More than a year after Great Southern informed the Stengers it was accelerating their loan, and several months after the Stengers filed their original petition in this case, an agreement was made between the Stengers and Zimmerman to "cancel, reverse, rescind, and obliterate" the events upon which Great Southern acted. Pursuant to the agreement, Zimmerman gave the Stengers a "Special Warranty Deed" to the property and Stengers cancelled the note and released the deed of trust given them in 1977 by Zimmerman. The deed purporting to effect the rescission noted that the conveyance was "subject to" the suit presently before us on appeal.

Plaintiffs say that the adverse summary judgment on their Count III, which set up the rescission theory, was in error in that a triable issue existed and, in fact, the trial court should have declared the condition triggering the acceleration eliminated. They cite *Fidelity Land Development Corp. v. Rieder & Sons Building & Development Co.,* 151 N.J.Super. 502, 377 A.2d 691 (1977). That case is somewhat supportive of the Stengers in that the fact of a reconveyance was stated as lending merit in "these circumstances" to the claim that the condition for acceleration had been eliminated. We hasten to note, however, that "these circumstances" consisted of a conveyance by a corporation to its principal individual figure "for tax purposes" and for a nominal consideration. This transfer did not result in any change in the plans for the land, and, in fact, the corporation continued to treat it as its own. The court held that this type of paper transfer, especially where there could be no loss of security, was not a transfer which even triggered the due-on-sale clause. 377 A.2d at 695. It is true that the individual reconveyed to the corporation as soon as it became apparent the lender regarded the

first transfer as a basis for acceleration, and the court noted this favorably. However, this was not required for the result reached, and, in any event, the court seemed to be applying an impairment of security standard.

The present circumstances are not comparable and we do not regard this reconveyance as eliminating the right to accelerate.

If some factual issue was present in this case which would provide a possible avenue of relief for plaintiffs, then the summary judgment entered would be inappropriate. Our review is in the light most favorable to the nonprevailing party. *Bishop v. United Missouri Bank of Carthage*, 647 S.W.2d 625, 626[2] (Mo.App. 1983). However, we review the grant of summary judgment on the whole record. *Labor Discount Center, Inc. v. State Bank & Trust Co.*, 526 S.W.2d 407, 429[38] (Mo.App.1975). It was abundantly clear at the time the trial court ruled for defendants on Count III that plaintiffs were fully aware of the due-on-sale clause and its possible consequences when they conveyed to Zimmerman. We think the issues, at least in the present case where plaintiffs knew of the due-on-sale clause and took a calculated risk, are governed by the contractual rights of the parties. Those rights are framed by the acceleration clause itself which is generally viewed as a valid mode of agreeing when the debt shall be payable. *Meier v. Meier*, supra, 16 S.W. at 227; *Wolfley v. Wooten*, 220 Mo.App. 668, 293 S.W. 73, 75[1] (1927). Once the acceleration occurred, it was too late to reverse by eliminating the situation which triggered the acceleration. This is comparable to the treatment given the usual acceleration right triggered by a failure to make a timely installment payment. Once that right is exercised, it is too late to cure by tendering the installment. *Capital City Motors, Inc. v. Thomas W. Garland, Inc.*, 363 S.W.2d 575, 578[3] (Mo.1962); *Miller v. Jones*, 635 S.W.2d 360, 362[3] (Mo.App. 1982). At that point, as in the case at hand, the contract provides for payment of the entire balance and that is the act which is required to be performed to circumvent foreclosure.

We are not saying that a reconveyance would never be brought into the balance of equities. However, the ploy used by plaintiffs came late in the day, even after they had brought suit to avoid the due-on-sale clause on other grounds, and they do not argue that any particular equities could be shown on their behalf.

Plaintiffs' appeal discloses no merit in its allegations of error, and we affirm the judgment.

FLANIGAN, P.J., and TITUS, J., concur.

CROW, J., recused.