CHRISTINE LARSON v. ALGOT A. JOHNSON AND OTHERS.[1]

November 16, 1928.

No. 26,980.

**Knowledge gained by an attorney when acting for one client not imputed to an earlier client.**

1. Knowledge of a written assignment of a contract for deed by the vendee cannot be imputed to the vendors from the fact that their attorney drew the assignment, his employment for that purpose not being for or in behalf of the vendors.

**Power of alienation not unlawfully suspended.**

2. In a contract for the sale of real estate, the purchase price payable in monthly instalments, possession given the vendee, re-entry to the vendors in case of default or breach by the vendee, the power of alienation is not unlawfully suspended by a provision that no assignment thereof shall be valid or binding on the vendors unless in writing approved by them.

**Neither under the pleadings nor the findings was plaintiff entitled to specific performance.**

3. The vendee, being in arrears in his payments for many months, to avoid a statutory foreclosure, quitclaimed to the vendors and surrendered possession of the premises to them, they being ignorant of the vendee's assignment of the contract to plaintiff. In that situation the vendors were entitled to rely on the provision of the contract that there had been no assignment. And plaintiff, who has never tendered performance nor in her complaint alleged ability or willingness to perform, is not entitled to any relief on the findings of fact.

Attorney and Client, 6 C. J. § 144 p. 640 n. 66.
Perpetuities, 30 Cyc. p. 1519 n. 86.

See 21 R. C. L. 871.

Plaintiff appealed from a judgment of the district court for Hennepin county, Baldwin, J. in favor of defendants Chris and Jennie Luebkeman. Affirmed.

*Thompson, Hessian & Fletcher,* for appellant.
*Harold E. Paulson* and *G. A. Will,* for respondents.

[1]Reported in 221 N. W. 871.

HOLT, J.

Plaintiff appeals from the judgment declaring unfounded her asserted interest or lien in certain land.

There is no settled case, and plaintiff predicates her appeal solely on the proposition that the findings of fact entitle her to a judgment awarding her some substantial relief. A short statement of the facts found is this:

Defendant Chris Luebkeman and wife, hereinafter referred to as respondents, ownd certain real estate with buildings near the state university, and on December 31, 1920, made a contract of sale thereof to defendant Johnson. The sale was made subject to mortgages aggregating $18,953, which the buyer assumed and agreed to pay; he also agreed to pay, as purchase price, the additional sum of $29,047, $6,200 thereof on the delivery of contract, and the balance of $22,847, with six per cent interest, in monthly instalments of $100 a month, beginning January 1, 1921, and the same sum for each succeeding month to June 1 of that year, when the payments increased to $200 per month and thereafter varied between that sum and $400 per month until fully paid. The buyer was to have possession. To make up the initial payment of $6,200, Johnson had procured plaintiff to assign a $2,000 note and mortgage she owned to respondents. And in consideration therefor Johnson, on January 19, 1921, executed his note to plaintiff for $2,000 and at the same time assigned as security his contract with respondents. This assignment was not witnessed or acknowledged, but on April 22, 1921, a formal assignment was executed by him. Respondents had no actual knowledge of either the informal or formal assignment until after they obtained a quitclaim from Johnson terminating his interest in the contract and premises, as hereinafter noted. Their contract with Johnson contained this provision:

"It is further understood and agreed by and between the parties hereto, that no assignment of this contract shall be valid or binding on the said parties of the first part unless such assignment shall be in writing duly approved by the said first parties by endorsement thereon of their consent thereto."

No consent, written or otherwise, to the assignments was obtained from respondents. During all the times herein referred to, one Paulson was the attorney of the respondents. Paulson drew the contract between respondents and Johnson. He also drew the assignments from Johnson to plaintiff. Soon after going into possession Johnson defaulted in the monthly payments to respondents, and on February 8, 1922, was in default approximately in the sum of $5,000, when he and respondents agreed to obviate foreclosure of the contract by Johnson's conveying to respondents by deed of quit-claim the premises described in the contract. This was done on that day, and Johnson surrendered the premises to respondents, who ever since have remained in undisturbed possession thereof. Neither Johnson nor plaintiff has ever offered to make good the default in the payments stipulated in the contract. Johnson never paid plaintiff any part of the $2,000 evidenced by the note mentioned. Upon these facts found the court directed judgment in favor of respondents.

The first contention of appellant is that respondents were charged with constructive knowledge of Johnson's assignment of the contract to plaintiff, because their attorney, Paulson, possessed such knowledge, having drawn the assignment. To this we cannot agree. Although it is found that Paulson was the attorney of respondents from the inception of the deal with Johnson until it was canceled by Johnson's quitclaiming to them, there is no finding that Paulson drew the quitclaim deed or acted for respondents in that transaction. But even assuming that he did, respondents should not be chargeable with the knowledge gained by the attorney in a transaction between other clients. Usually attorneys are employed for specific pieces of work for many different clients in the course of the day or week. It would indeed be hazardous business to hire an attorney if knowledge should be imputed to the client of matters that have come to the notice of the attorney months before while acting for some other client. When Paulson drew the assignment to plaintiff he was not acting for respondents. As said in Trentor v. Pothen, 46 Minn. 298, 300, 49 N. W. 129, 24 A. S. R. 225: "The facts of

which the agent had notice must be within the scope of the agency, so that it becomes his duty to act upon them or communicate them to his principal." Had there been a finding that Paulson was employed by respondents to obtain the quitclaim deed from Johnson, there might have been some substance to the claim that Paulson's knowledge of plaintiff's assignment was imputed to respondents.

Different facts were present in State Bank of Morton v. Adams, 142 Minn. 63, 170 N. W. 925, where the officer of the bank who conducted the transaction for the bank had notice which a jury could impute to the bank. There the officer was the only one who acted for the bank in acquiring the note. Here it does not appear that respondents employed Paulson to obtain the surrender of Johnson's rights in the premises. For aught that appears they may have concluded the negotiations, even if from the fact that Paulson was their attorney we assume that he drew the quitclaim deed and advised them that Johnson's rights were effectively terminated thereby.

It is also contended that the provision prohibiting the assignment of the contract by the buyer without the consent of the sellers is void as being an unlawful suspension of the power of alienation prohibited by G. S. 1923, § 8044. In Mineral Land Inv. Co. v. Bishop Iron Co. 134 Minn. 412, 416, 159 N. W. 966, L. R. A. 1917D, 900, it was said: "The power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed." Here an absolute fee in possession could at all times be granted by the sellers and buyer, so there was no suspension of the power of alienation for any time whatever. Provisions in leases against the lessee's subletting or assigning without the lessor's consent are quite common, and we are not aware of their validity being successfully questioned. Such leases often run many years. Obviously such stipulations are important to the lessor, who is interested in having the property which has been intrusted to the possession of another properly cared for, and he should have a voice in the selection of a proper caretaker. The same reason exists for the need of similar provisions in a contract for

deed where possession is given to the vendee during the time the instalments of the purchase price are being paid. Leases and contracts for deed are also similar in that in each there is usually a right of re-entry or retaking possession in case of default or violation of any covenant in the instrument. The contract here involved contained a right of re-entry or the retaking of possession. But it is argued, an assignment of a lease by the lessee as security merely is not a breach of the covenant not to assign. Crouse v. Mitchell, 130 Mich. 347, 90 N. W. 32, 97 A. S. R. 479; Riggs v. Pursell, 66 N. Y. 193. Likewise voluntary bankruptcy proceedings are held not a breach of such a covenant. Bemis v. Wilder, 100 Mass. 446; Miller v. Fredeking, 101 W. Va. 643, 133 S. E. 375, 46 A. L. R. 842. We may concede that this assignment intended only as security was not such a breach as would warrant a forfeiture and re-entry. Johnson did not give or attempt to give plaintiff possession of any part of the premises. The time had not therefore arrived when it became necessary for respondents to give effect to the assignment by giving their consent.

But viewing the deal between Johnson and plaintiff from that angle, and also giving force to the provision against assignments without respondents' consent, it should be said that since respondents had not given consent and had no actual knowledge of the assignment to plaintiff, they were at liberty to proceed on the theory that there had been no dealing at all with anyone in respect to the contract, and hence they could safely accept possession after default from Johnson and be completely restored to full ownership of the premises by the quitclaim from him the same as if they had foreclosed the contract under the statute. Under the circumstances here disclosed, a statutory foreclosure of the contract could have been made by serving the notice on Johnson alone. Hage v. Benner, 111 Minn. 365, 127 N. W. 3. It seems to us that plaintiff taking an assignment of the contract must be charged with knowledge of its terms, requiring the written consent of respondents to protect her rights, and that she cannot after Johnson surrendered possession and quitclaimed to respondents, they being ignorant of the assignment, claim any interest or right of lien in the premises.

But even if it be assumed that plaintiff acquired some interest in the contract in virtue of the assignment, she certainly has not placed herself in a position to obtain relief under the pleadings and findings in this case. She is out of possession and is not entitled thereto until the consent of respondents has been obtained to the assignment. The stipulated monthly payments in arrears for over five years have not been tendered; nor is there an offer in the complaint to pay them; nor is ability or willingness to do so alleged. It is at least necessary that the complaint contain such offer before specific performance could be granted. M. St. P. & S. S. M. Ry. Co. v. Chisholm, 55 Minn. 374, 57 N. W. 63. The first acts of performance were upon the vendee and his assigns, on many of which there were long standing defaults. Plaintiff was never entitled to possession and never demanded it, hence cannot have any right to an accounting of rents and profits. As we view the pleadings and findings of fact, no judgment awarding plaintiff any relief could be entered.

The judgment is affirmed.