MINNESOTA CENTRAL RAILROAD
CO., Plaintiff (C7–98–2136),
Appellant (C9–99–43),

Minnesota Valley Regional Rail
Authority, Appellant (C7–98–
2136), Plaintiff (C9–99–43),

v.

MCI TELECOMMUNICATIONS
CORPORATION,
Respondent.

Nos. C7–98–2136, C9–99–43.

Court of Appeals of Minnesota.

June 29, 1999.

534

Thomas A. Jones, Michael Ferro, Ferro & Jones, P.A., Willmar, for appellant Minnesota Central Railroad Company.

Ruth Ann Webster, Michael S. Dove, Richard F. Prim, Gislason, Dosland, Hunter, & Malecki, P.L.L.P., New Ulm, for appellant Minnesota Valley Regional Rail Authority.

Gregory R. Merz, Kathryn J. Bergstrom, Scott N. Ihrig, Gray, Plant, Mooty,

Mooty, & Bennett, P.A., Minneapolis, for respondent.

Considered and decided by
SHUMAKER, Presiding Judge,
RANDALL, Judge, and HARTEN, Judge.

## OPINION

RANDALL, Judge.

Appellants argue the district court erred when it granted respondent summary judgment and ruled that appellants' interest in a railroad right-of-way was subject to respondent's easement. Appellants contend the easement is invalid because written consent to the sale of the easement was not obtained by respondents as required by a properly recorded consent-to-transfer clause and respondent had constructive notice that such consent was necessary. Appellants argue the doctrine of good-faith purchaser for value does not apply in the present case. Finally, appellants argue the district court erred when it ruled that the equitable defenses of waiver and estoppel defeat the restrictions contained in the agreement for sale. We reverse.

## FACTS

In 1984, the Minnesota Valley Regional Rail Authority (MVRRA) and Minnesota Department of Transportation (MNDOT) acquired a railroad line running from Norwood to Hanley Falls from the Chicago North Western Transportation Company. On December 15, 1983, the MVRRA and MNDOT sold the railroad line to the Minnesota Valley Transportation Company (MVTC) pursuant to an agreement of sale. Under the terms of the agreement, MVRRA retained title to all railroad assets until the purchase price was paid in full. In addition, the agreement contained a consent-to-transfer clause prohibiting the transfer of any assets without the prior written consent of MVRRA and MNDOT.

In early July 1986, MVTC, with the consent of MVRRA, assigned the agreement of sale to MNVA Railroad, Inc. (MNVA). On October 1, 1992, MNVA sold a permanent easement in the railroad right-of-way to respondent MCI Telecommunications Corporation (MCI) so MCI could install a fiber optic cable to carry telecommunications traffic between Chicago and Salt Lake City. MVRRA's written consent was not obtained before the easement was sold. On December 12, 1994, with MVRRA's consent, MNVA transferred its interest in the railroad line to the Minnesota Central Railroad Company (Minnesota Central Railroad).

On May 23, 1997, after learning of MCI's purported easement, Minnesota Central Railroad commenced suit against MCI seeking a declaration that the easement purportedly granted by MNVA to MCI was invalid. MVRRA and MNDOT were joined involuntarily as additional plaintiffs.

On February 13, 1998, MVRRA moved for summary judgment, arguing that MCI's purported easement is invalid because MCI failed to obtain MVRRA's prior written consent as required by the agreement of sale. On June 17, 1998, the district court denied MVRRA's motion for summary judgment, ruling that MCI was not a party to the agreement of sale and therefore could not breach it. On July 17, 1998, MCI moved for summary judgment to dismiss all claims and for declaratory judgment against all plaintiffs. On July 23, 1998, MVRRA moved to strike MCI's equitable defenses, arguing such defenses did not apply to a governmental entity. On July 31, 1998, MVRRA renewed its motion for summary judgment. On October 9, 1998, the district court granted summary judgment for MCI and dismissed MVRRA's claims, ruling that MVRRA was not a good-faith purchaser for value. MVRRA and the Minnesota Central Railroad have brought separate appeals challenging the district court's grant of summary judgment in MCI's favor. These appeals were consolidated by order of this court dated March 12, 1999.

## ISSUES

1. Was MCI bound by the consent-to-transfer clause contained in the properly recorded agreement of sale, and therefore required to obtain the written consent of MVRRA before obtaining its easement from MNVA?

2. Did the district court err when it ruled that MVRRA's interest in the railroad right-of-way was subject to MCI's purported easement?

3. Do the equitable doctrines of estoppel and waiver work to prevent the MVRRA from enforcing the terms of the consent-to-transfer clause?

## ANALYSIS

On appeal from summary judgment, the reviewing court determines whether any genuine issues of material fact exist and whether the district court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). This court need not defer to the district court's decision on purely legal issues. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

### I.

▉ MVRRA argues that the district court erred when the court ruled that MNVA could grant a permanent easement to MCI without the prior written consent of MVRRA as required by the consent-to-transfer clause contained in the agreement of sale. MCI counters, arguing that MVRRA gave the equivalent of written consent when it approved the minutes of two MVRRA meetings.

It is undisputed that MNVA derived all its right and interest in the railroad right-of-way from the agreement of sale between MVRRA, MNDOT, and MVTC. The agreement of sale contained a consent-to-transfer clause that provided:

This Agreement or any rights or obligations thereunder shall not be assignable or transferable by the Company

[MVTC] without the written consent of the Authority [MVRRA] and MnDOT.

The agreement of sale functioned essentially as a contract for deed. MNVA held equitable title in the right-of-way and would only receive legal title from MVRRA once it complied fully with its obligations under the agreement of sale.

The basis of appellants' claim is that MCI failed to obtain MVRRA's written consent pursuant to the consent-to-transfer clause contained in the agreement of sale. The validity of consent-to-transfer clauses is recognized in Minnesota. In *Larson v. Johnson*, 175 Minn. 502, 505–06, 221 N.W. 871, 872–73 (1928), the supreme court observed:

Provisions in leases against the lessee subletting or assigning without the lessor's consent are quite common, and we are not aware of their validity being successfully questioned. Such leases often run many years. Obviously such stipulations are important to the lessor, who is interested in having the property which has been intrusted to the possession of another properly cared for, and he should have a voice in the selection of a proper caretaker. The same reason exists for the need of similar provisions in a contract for deed, where possession is given to the vendee during the time the installments of the purchase price are being paid.

In *Larson*, defendant Luebkemans entered into a contract for the sale of real estate with defendant Johnson. *Id.* at 503, 221 N.W. at 871. The contract provided that Johnson could not assign his interest in the real estate without the written consent of the Luebkemans. *Id.* at 503, 221 N.W. at 872. Without obtaining the Luebkemans' consent, Johnson assigned his interest in the contract to plaintiff Larson as security for a loan. *Id.* Johnson then defaulted under the contract and gave the Luebkemans a quit claim deed for the real estate. *Id.* The supreme court held that as an assignee to the underlying con-

tract, Larson took no interest in the real estate because he was charged with knowledge of the underlying contract's terms, including the consent-to-transfer clause. *Id.* at 506, 221 N.W. at 873.

The holding in *Larson*, old, but still the law, establishes that restrictions contained in a valid consent-to-transfer clause are applicable to third parties. To hold otherwise would render consent-to-transfer clauses a nullity. Simply put, a contract for deed vendee can grant an easement or sell any part of the fee that he has not yet paid for *only* if the contract for deed allows him to do that; the vendee cannot to do so if the contract for deed forbids the vendee from doing so without the vendor's permission.

Here, there is little to distinguish *Larson*. The agreement of sale contains a consent-to-transfer clause requiring prior written consent before any transfer or assignment of the railroad assets can be effected. The language of the consent-to-transfer clause is clear and unambiguous. Where the language of a consent-to-transfer clause is unambiguous, this court will give effect to the clause. *See Torgerson-Forstrom H.I. of Willmar, Inc. v. Olmsted Fed. Sav. & Loan Ass'n,* 339 N.W.2d 901, 904 (Minn.1983) (upholding due-on-sale clause where language of clause was "unambiguous" and there was no doubt of its intended meaning). Thus, MCI was required to obtain MVRRA's written consent before it purchased the easement from MNVA.

We reject MCI's assertion that MVRRA gave its written consent to the easement when it approved the minutes of two MVRRA meetings at which the MCI easement was discussed. The meeting minutes do not constitute an "official" action or binding act of MVRAA beyond the acknowledgment that the minutes accurately reflect what occurred at the meetings. By approving the minutes, MVRRA was simply acknowledging that the described actions and discussions took place

as recorded. Moreover, we note that the statements relied on by MCI were not made by a member of MVRRA. To adopt MCI's argument would mean a governmental entity could be bound by statements made by individuals reporting to a governmental body during meetings. The meeting minutes do not indicate that MVRRA, by vote, or resolution, specifically addressed and consented to MCI's easement. A governmental entity can only act through the official action of its board or other governing body. *See Morris v. Perpich,* 421 N.W.2d 333, 336 (Minn.App.1988) (holding county administrator lacked authority to bind county absent county board resolution authorizing administrator's promise), *review denied* (Minn. May 16, 1988). MVRRA did not take any official action beyond approving the minutes, and we conclude that the meeting minutes cannot be construed as MVRRA's written consent to MCI's purchase of the easement from the MNVA.

MVRRA insists that the district court erred on the law when it ruled that MCI was not bound by the consent-to-transfer clause because MCI was not a party to the agreement of sale. We agree. MCI cannot violate someone else's contract, of which they had notice (Minnesota is a "race-notice state"), by arguing "we haven't signed on to it." MCI had true constructive notice of the consent-to-transfer clause because the agreement of sale was properly recorded. Under Minnesota law, MVRRA gave notice to the world, including MCI, of the consent-to-transfer clause and all other clauses in the recorded document.

A purchaser who has either actual, implied, or constructive notice of inconsistent outstanding rights of others is not a bona fide purchaser entitled to protection under Minnesota's Recording Act. *Anderson v. Graham Inv. Co.,* 263 N.W.2d 382, 384 (Minn.1978). As a matter of law, constructive notice "imputes notice to all purchasers of any properly recorded instrument even though the purchaser has

no actual notice of the record." *Id.* "[A] recorded interest is constructive notice only of the facts appearing on the face of the record." *Id.* at 385 (citations omitted).

The district court's ruling that MCI was not bound by the consent-to-transfer clause because "it was not a party to the agreement of sale" eviscerates Minnesota's recording act, and is not a correct statement of Minnesota real estate law. The purpose of the act is, in part, to give notice to subsequent purchasers of the inconsistent outstanding rights of others. *See Telford v. Henrickson*, 120 Minn. 427, 432, 139 N.W. 941, 943 (1913) (noting purpose of recording acts "is to give notice to certain persons * * * of the transactions evidenced by recordable instruments").

■ It is undisputed that the agreement of sale was *recorded in all five counties in which the railroad right-of-way passes.* It is conceded that MCI failed to conduct a title search in any of the five counties. Because the consent-to-transfer clause was a properly recorded instrument, MCI is deemed, as a matter of law, to have constructive notice of the terms contained in the agreement of sale, including the consent-to-transfer clause. *See Anderson*, 263 N.W.2d at 384 (holding "a purchaser is charged as a matter of law with constructive notice of any properly recorded instrument" (citations omitted)). MCI, therefore, was bound by the requirements contained in the consent-to-transfer clause. *See Larson*, 175 Minn. at 506, 221 N.W. at 873 (holding third party had no interest in real estate where third party charged with notice of consent-to-transfer clause contained in contract between purchaser and seller).

In sum, we conclude that the district court erred when it concluded that MCI was not bound by the consent-to-transfer clause because MCI was not a party to the agreement of sale. The agreement of sale, including the consent-to-transfer clause, was a properly recorded instrument. MCI, as a matter of law, had constructive notice of the consent-to-transfer clause and

was required to obtain MVRRA's written consent before it purchased its purported easement. It did not do so, and its purported easement in the railroad right-of-way is, therefore, invalid.

## II.

MVRRA argues that the district court improperly concluded that its interest in the railroad right-of-way was subject to MCI's purported easement. Similarly, MVRRA argues that the district court erred when it concluded that none of the plaintiffs were entitled to good-faith purchaser status because each plaintiff had implied notice of MCI's purported easement.

Because we conclude that MCI's easement is invalid, we need not address this issue. If we were to consider the issue, the facts conclusively establish that MVRRA could not possibly have purchased the railroad right-of-way with notice of MCI's easement. MVRRA purchased the right-of-way in 1983, nine years before MCI acquired its purported easement. Section 5.1 of the easement agreement between MCI and MNVA provides that "the MCI easement shall be subordinate to any and all presently existing rights in the easement area." Because MVRRA acquired its interest long before MCI acquired its purported easement, even under the terms of MCI's easement agreement, MVRRA's interest in the railroad right-of-way was superior to that of MCI. Similarly, MVRRA cannot be charged with implied notice of MCI's purported easement. It had already acquired its interest in the railroad right-of-way before MCI started installing the fiber optic cable. The district court erred when it concluded that MVRRA's interest in the railroad right-of-way was subject to MCI's purported easement.

## III.

■ The parties seek review of two issues that were presented to the district

court, but were not passed on by the district court when it granted MCI summary judgment. First, MCI insists that MVRRA vested MNVA with the right to grant easements and licenses and MNVA, therefore, was no longer constrained by the consent-to-transfer clause. Second, MVRRA argues that the equitable doctrines of estoppel and waiver do not work to defeat the restrictions contained in the consent-to-transfer clause. We decline to address the merits of these issues because, although presented to the district court and raised in the parties' briefs, these issues were not passed on by the district court. A reviewing court will not address an issue raised in the district court if the district court did not rule on the issue. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). This is especially true when the underlying facts are in dispute. *See Rehberger v. Project Plumbing Co.*, 295 Minn. 577, 578, 205 N.W.2d 126, 127 (1973) (holding court would not review issue presented to, but not passed on by district court, noting "[t]his is especially true in a case * * * where the facts * * * are in dispute" (citation omitted)).

 In support of its argument that MVRRA vested MNVA with the authority to negotiate and enter into easements, MCI relies on statements made by Patrick Neaton, the attorney for MNVA, and Larry Wood, the former president of MNVA. In his deposition, Neaton testified that it was his recollection that MVRRA

> acknowledged that MNVA, as equitable owner, had the right to negotiate licenses and easements and leases and that [the MNVA] had the right to collect income.

He further stated that he believed MNVA had the right to negotiate licenses and easements without the approval of MVRRA, including the MCI easement. Wood testified similarly during his deposition.

But David E. Schauer, the attorney for MVRRA, stated in his affidavit that "at no time, were there ever any discussions be-

tween Larry Woods, Patrick Neaton, MNVA and the [MVRRA] with respect to easements." He states further that at no time did MVRRA and MNVA ever discuss who had the right to negotiate easements. Most notably, Schauer states,

> [a]t no time, did the [MVRRA] agree that MNVA had the right to negotiate easements. Instead, the [MVRRA] acknowledged that MVNA had the ability to negotiate licenses and leases, which were not a disposition of the [MVRRA's] assets.

Also according to Schauer, MVRRA never granted MNVA the right to negotiate easements on behalf of MVRRA.

Schauer's affidavit directly contradicts the statements made by Neaton and Wood. Thus, genuine issues of material fact exist on the issue of whether MVRRA granted MNVA the authority to negotiate easements in the railroad right-of-way. Because the district court did not pass on this issue and because genuine issues of material fact exist, we decline to address the merits of this issue. Thus, we do not, as MCI urges, affirm the district court's decision on this basis.

 The issues of estoppel and waiver are also inappropriate for appellate review. Although presented to the district court and addressed at length in the parties' briefs, the district court did not address the equitable doctrines of estoppel or waiver when it granted summary judgment in MCI's favor. Although the parties present evidentiary support for their respective positions on the issue of estoppel and waiver in their briefs, this only illustrates that genuine issues of material fact exist regarding estoppel and waiver. Given the procedural posture of this issue, our ruling in MVRRA's favor on the notice issue, and that issue of material fact exists, we conclude that review of appellant's position on estoppel and waiver is inappropriate.

**IV.**

MNVA argues that the district court erred when it ruled that MNVA had inqui-

ry notice of MCI's easement. MNVA also contends its status as a contract for deed vendee limited its ability to grant a permanent easement in the railroad right-of-way. MNVA insists that genuine issues of material exist on those two issues that preclude summary judgment. Because we conclude that MCI's easement is invalid, the issues presented by MNVA's are moot. We decline to reach those two issues.

## V.

■ MVRRA moves this court to strike material contained in the appendix attached to MCI's brief, arguing it is outside the record on appeal because it is not contained in the district court file. Specifically, MVRRA seeks to strike photographs of "markers" warning of the buried MCI fiber optic cable running along the railroad right-of-way, a portion of the deposition testimony of Marc McDougall, and a MCI meeting attendance list.

■ The record on appeal is comprised of "[t]he papers filed in the trial court, the exhibits, and the transcripts of the proceedings, if any." Minn. R. Civ.App. P. 110.01. A reviewing court "cannot base its decision on matters outside the record on appeal and any matters not part of the record must be stricken." *Mitterhauser v. Mitterhauser*, 399 N.W.2d 664, 667 (Minn. App.1987). Our review of the record reveals that the "marker" photographs were filed in the district court. The MCI meeting minutes were not filed in the district court record and only a portion of McDougall's deposition testimony is contained in the district court record. We deny MVRRA's motion to strike as it relates to the "marker" photographs and the portion of McDougall's deposition testimony actually contained in the district court file. We grant MVRRA's motion to strike the MCI meeting attendance list and those portions of McDougall's testimony not contained in the district court file.

## DECISION

As a matter of law, MCI is charged with constructive notice of the consent-to-transfer clause contained in the properly recorded agreement of sale between MVRRA and MNVA. MCI, therefore, is bound by the terms of the consent-to-transfer clause. Because it failed to obtain the written consent of MVRRA as required by the consent-to-transfer clause, MCI does not have a valid easement in the railroad right-of-way. Given the factual disputes underlying other issues presented to, but not passed on by the district court, we decline to consider those issues on appeal.

**Reversed; motion to strike granted in part.**